Matthew G. PENTAREK, Appellant,

v.

Gregory A. CHRISTY, Appellee.

Matthew G. Pentarek and Connie W. Pentarek, his Wife, Appellees,

v.

Gregory A. Christy, Appellant.

Superior Court of Pennsylvania.

Argued March 16, 2004.

Filed June 14, 2004.

Reargument Denied Aug. 25, 2004.

Raymond J. Seals, Pittsburgh, for Pentarek.

Wayne A. Kablack, Indiana, for Christy.

Before: KLEIN, BENDER, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 In this appeal, Plaintiffs Matthew G. Pentarek and Connie Pentarek, his Wife, appeal a judgment entered in favor of the defendant on May 28, 2003, under authority of Civil Rule 227.4. Defendant Gregory A. Christy cross-appeals from an order entered by the trial court on June 3, 2003, purporting to grant a new trial in favor of the Pentareks. We determine, in accordance with Rule 227.4, that the trial court's June 3 order was a legal nullity and that

the verdict of the jury was properly reduced to judgment on May 28, 2003. We conclude also that given the substantially uncontroverted nature of the medical testimony in this case, the judgment of May 28, 2003 must be affirmed in part, and a new trial granted limited to damages.

¶ 2 This matter arises out of a motor vehicle accident in 1993 in which Christy's vehicle "rear-ended" Pentarek's while the vehicles were attempting to steer around a fallen tree branch in the road. The record suggests that the collision occurred as Pentarek pulled into the opposing lane of traffic but then stopped short and tried to pull back into his own lane on the approach of opposing traffic. Christy, driving immediately behind, failed to stop, and ran into the back of Pentarek's car. Pentarek, who was riding alone, then alighted from his vehicle and came back to Christy's truck. Although he gave no indication of having sustained injury he did say that his seat had been broken and was lying flat. Medics then transported Pentarek to a local hospital where he was admitted for observation, but discharged the next day with instructions to see his primary care physician. Both vehicles exhibited slight damage.

¶ 3 The Pentareks commenced this action, Matthew seeking damages for spinal degenerative disease allegedly sustained as a result of the collision, and Connie seeking recovery for loss of consortium. The matter proceeded to trial in November 2002 before the Honorable William J. Martin, P.J. Both parties adduced expert testimony and both experts concluded that the collision had some causative role in Matthew Pentarek's injuries. However, Christy produced additional evidence in the form of medical records documenting that Pentarek had suffered numerous other back injuries both before and after the events at issue. Christy used the records

in cross-examination, eliciting admissions from Pentarek's expert witness that, in forming his opinion, he was not aware of several of Pentarek's other injuries.

¶ 4 At the conclusion of trial, the jury returned a verdict for the defendant. The jury found Christy negligent but determined that his negligence was not a substantial factor in bringing about the Pentareks' harm. Shortly thereafter, on November 26, 2002, the Pentareks filed a Motion for Post–Trial Relief pursuant to Civil Rule 227.1 asserting that the verdict was against the weight of the evidence. Because the court omitted to rule on the motion within 120 days, Christy, on May 28, 2003, invoked judgment by operation of law pursuant to Rule 227.4(1)(b). Five days later, on June 3, 2003, Judge Martin entered the order purporting to grant the Pentareks' post-trial motion, ordering a new trial. The parties then cross-appealed.

¶ 5 The Pentareks, in their appeal from the May 28, 2003 judgment, raise one question:

1. WAS THE JURY VERDICT AGAINST THE WEIGHT OF THE EVIDENCE WHERE THE JURY DETERMINED THE DEFENDANT WAS NEGLIGENT, BUT THAT THE DEFENDANT'S NEGLIGENCE WAS NOT A SUBSTANTIAL FACTOR IN CAUSING HARM TO THE PLAINTIFF EVEN THOUGH BOTH PARTIES['] MEDICAL EXPERTS AGREED THE PLAINTIFF WAS INJURED?

Brief for Appellant at 4. Christy, in his cross-appeal, raises the following three questions:

1. Can the lower court issue an opinion and order after judgment has already been taken for failure of the court to file an opinion and order of

court within one hundred twenty days from the filing of the Post Trial Motions[?]

2. Did the appellant waive the right to file a Post Trial Motion when the issue was not raised before the jury was dismissed[?]

3. Whether the verdict of the jury can be overturned when there was sufficient evidence to determine that the appellant did not suffer a compensable injury[?]

Brief for Appellee at 4. Christy's first two questions raise issues that when resolved may substantially curtail the need for further appellate review. Accordingly, we shall dispose of those questions before proceeding to the merits of the Pentareks' appeal.

 ¶ 6 Christy's first question, challenging the trial court's entry of an order purporting to grant the Pentareks' Motion for Post–Trial Relief, raises a question of law concerning the operation of Civil Rule 227. Christy contends that the court's June 3, 2003 order granting a new trial in favor of the Pentareks was a legal nullity, as it was entered beyond the time specified in the Rule and after the judgment of May 28 had been entered in accordance with the Rule. This issue poses a question of law, of which our review is plenary. *See State Farm Fire and Cas. Co. v. Mac-Donald,* 2004 WL 1049534, *1 (Pa.Super., May 11, 2004). Upon consideration, we find Christy's assertion well founded.

¶ 7 Civil Rule 227.4 provides in pertinent part:

**Rule 227.4. Entry of Judgment upon Praecipe of a Party**

In addition to the provisions of any Rule of Civil Procedure or Act of Assembly authorizing the prothonotary to enter judgment upon praecipe of a party, the prothonotary shall, upon praecipe of a party:

(1) enter judgment upon the verdict of a jury or the decision of a judge following a trial without jury, or enter the decree nisi as the final decree, if

\* \* \* \* \* \*

(b) one or more timely post-trial motions are filed and the court does not enter an order disposing of all motions within one hundred twenty days after the filing of the first motion. A judgment entered pursuant to this subparagraph shall be final as to all parties and all issues and shall not be subject to reconsideration;

Pa.R.C.P. 227.4. Interpreting this provision, our Courts have recognized the salutary purpose of the rule, documented in the rule's Explanatory Comment—1995, to limit post-trial delay. *See Conte v. Hahnemann Univ. Hosp.,* 707 A.2d 230, 231 (Pa.Super.1998). To that end, any party may praecipe for entry of final judgment, notwithstanding the pendency of post-trial motions, if more than 120 days have passed and the trial court has failed to enter an appropriate order. *See Jahanshahi v. Centura Dev. Co., Inc.,* 816 A.2d 1179, 1183 (Pa.Super.2003).

 ¶ 8 Although application of the Rule is optional with the parties, who may await the trial court's decision, a judgment once entered in accordance with the Rule "is not subject to any other motion to strike, open or vacate." *Morningstar v. Hoban,* 819 A.2d 1191, 1194 (Pa.Super.2003); *see also Conte,* 707 A.2d at 231. Moreover, "[t]he potential delay inherent in [the Rules of Appellate Procedure] providing for reconsideration of an order is avoided by prohibiting reconsideration of the judgment." Pa.R.C.P. 227.4, Explanatory Comment—1995, I.a.; *see also Armbruster v. Horowitz,* 572 Pa. 1, 813 A.2d 698, 702 n. 3 (2002) (concluding "[r]econsideration by the trial court is strictly pro-

hibited"). Thus, judgment entered under Rule 227.4 is final and conclusive as to all parties and all issues "and the case is ready in its entirety for the appellate process." *Conte,* 707 A.2d at 231. Indeed, the very purpose of the Rule is to truncate the authority of the trial court to affect the judgment in any way, allowing the parties the ability to "move the case along." Pa. R.C.P. 227.4, Explanatory Comment— 1995, I.a; *see also Pittsburgh Const. Co. v. Griffith,* 834 A.2d 572, 592–93 (Pa.Super.2003) (concluding that Rule 227.4(1)(b) divested motions court of authority to strike judgment entered under provisions of the Rule). We conclude accordingly that the trial court's order in this case, purporting to grant the Pentareks' post-trial motion after entry of the judgment pursuant to Rule 227.4 on May 28, 2003, is entirely devoid of legal effect. The clear language of the Rule, its Comment, and subsequent rulings of our Courts allow no other conclusion. Accordingly, we find the trial court's order of June 3, 2003, a legal nullity and declare it vacated. Because the judgment of May 28 finalizes the only cognizable ruling in this case, we shall address the remaining questions in relation to it.

¶ 9 In his second question, Christy challenges the Pentareks' appeal on the basis that they failed to preserve their right to seek a new trial by lodging a specific objection to the verdict before the jury was discharged. Brief for Appellee at 13. In support of that conclusion, Christy cites the comment to Rule 227.1, which provides generally that grounds for new trial or judgment notwithstanding the verdict may not be raised for the first time on appeal. Brief for Appellee at 13. We note, however, that Christy offers no case citation to support his conclusion. On the record before us, we find his claim meritless.

¶ 10 Although we have recognized instances in which an objection is required to preserve the aggrieved parties' right to seek a new trial, *see Picca v. Kriner,* 435 Pa.Super. 297, 645 A.2d 868, 871 (1994), we have limited the circumstances under which the right is waived in its absence, *see Gorski v. Smith,* 812 A.2d 683, 707 (Pa.Super.2003).

> [T]he *Picca* waiver rule is only applicable to cases in which a litigant's failure to object to improper or ambiguous jury instructions or interrogatories causes an inconsistent verdict. The waiver rule should not be applied to cases in which the verdict is clear and unambiguous, albeit problematic, troublesome or disappointing.

*Gorski,* 812 A.2d at 707 (citation omitted). Thus, if circumstances do not indicate an inconsistent verdict, or where there appears no ambiguity or impropriety in the instructions or interrogatories to the jury, an objection is not required and the waiver on which Christy relies is inapplicable. *See id.*

¶ 11 Moreover, where as here, the appellant has sought a new trial on the basis that the verdict was opposed to the weight of the evidence, the *Picca* waiver rule is inapposite. *See Criswell v. King,* 575 Pa. 34, 834 A.2d 505, 511–12 (2003). This is because

> an objection at trial would not eliminate the need for a new trial if the weight claim were deemed meritorious.... [A] trial judge cannot issue a corrective instruction to the jury suggesting that the weight of the evidence does not support its verdict without invading the province of the jury by essentially directing the verdict.

*Id.* at 512 (citations omitted). Thus, where any objection made would merely challenge the weight of the evidence, an objection is neither necessary nor even appro-

priate in order to preserve a right to a new trial. *See id.; see also Hobbs v. Ryce,* 769 A.2d 469, 472 n. 3 (Pa.Super.2001).

¶ 12 In this case, Christy fails entirely to explain how the jury verdict was "inconsistent" and, unfortunately, fails to acknowledge the effect of our Supreme Court's holding in *King,* circumscribing the *Picca* waiver rule where a party's post-trial claims challenge the weight of the evidence. Moreover, Christy fails to allege any ambiguity or impropriety in the instructions to the jury or the special interrogatories. Under such circumstances, the rule in *Picca* cannot be applied. *See Criswell,* 834 A.2d at 512; *Gorski,* 812 A.2d at 707. We conclude accordingly that the Pentareks did not waive their right to a new trial.

¶ 13 Christy argues, in addition, that the Pentareks waived their right to a new trial by failing to state the basis of their claim with requisite specificity in their post-trial motion. Brief for Appellee at 13. Although we recognize that Rule 227.1 requires a specific statement of the grounds to be raised and condemns the use of "boilerplate" language, we fail to discern how such concerns invalidate the Pentareks post-trial motion. The precise language of the Pentareks' claim is as follows: "The verdict was against the weight of the evidence in that no damages were awarded the plaintiff by the jury even though the jury determined that the defendant was negligent." Following review of the caselaw on which the Pentareks rely to inform our analysis of this substantive issue, *see Andrews v. Jackson,* 800 A.2d 959 (Pa.Super.2002), we conclude that this language focuses precisely on the crux of the matter in dispute. Accordingly, we find no merit in Christy's suggestion that the Pentareks used boilerplate language in their post-trial motion. Consequently, their claim is not waived.

¶ 14 Moreover, upon review of the Pentareks' claim, we are compelled to conclude that they are entitled to relief as a matter of law. This issue, focused for our review in the Pentareks' appeal and Question 3 of Christy's cross-appeal, requires our determination of whether, when the defense expert concedes that the plaintiff suffered injury as a result of the underlying collision, the jury may conclude to the contrary that the collision was not the legal cause of the harm suffered. The Pentareks assert that such circumstances compel the jury to find causation, *i.e.,* to the extent that the opposing experts agreed on the cause of the plaintiff's injuries, the jury may not disregard their testimony. Brief for Appellant at 14–18. Upon careful consideration of controlling caselaw, we find the Pentareks' position correct and their argument dispositive.

¶ 15 As we have discussed, because the judgment we review was entered by operation of law, it deprived the trial court of the ability to grant a new trial. Thus, for purposes of determining the appropriate standard and scope of review, we deem the Pentareks' motion for new trial denied.

> Our standard of review [of an order] denying a motion for a new trial is to decide whether the trial court committed an error of law which controlled the outcome of the case or committed an abuse of discretion. A new trial will be granted on the grounds that the verdict is against the weight of the evidence where the verdict is so contrary to the evidence it shocks one's sense of justice.

*Campagna v. Rogan,* 829 A.2d 322, 328 (Pa.Super.2003) (citations omitted). Conversely, "a new trial should not be granted because of a mere conflict in testimony[.]" *Mano v. Madden,* 738 A.2d 493, 495 (Pa.Super.1999) (*en banc*).

¶ 16 In this case, we do not address a conflict in testimony but rather, rare unanimity among the parties' expert witnesses that the traffic collision at issue in fact caused Matthew Pentarek's back injury. The jury disregarded the experts' conclusions, determining instead that although the Defendant had been negligent, his negligence was not the cause of the Plaintiffs' harm. In the recent seminal case of *Andrews v. Jackson,* we addressed, comprehensively, the thorny issue that such a finding poses. *See* 800 A.2d 959, 960 (Pa.Super.2002) ("In this appeal, we must determine whether a jury may specifically find a plaintiff was not 'injured' in an accident, and deny compensation on that basis, where both part[ies'] medical experts testified that the plaintiff suffered some injury."). Synthesizing an extensive line of prior cases we reasoned that:

> Where there is no dispute that the defendant is negligent and both parties' medical experts agree the accident caused **some** injury to the plaintiff, the jury may not find the defendant's negligence was not a substantial factor in bringing about at least **some** of plaintiff's injuries. *See Neison v. Hines,* 539 Pa. 516, 653 A.2d 634, 637 (1995); *Mano, supra. Compare Henery v. Shadle,* 443 Pa.Super. 331, 661 A.2d 439 (1995). Such a verdict is contrary to the weight of the evidence adduced at trial. *See Neison, supra; Mano, supra.* In other words, "a jury is entitled to reject any and all evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic." *Neison,* 653 A.2d at 637. ·

*Id.* at 962 (internal citations modified for form). · We have concluded accordingly that "[i]t is impermissible for a jury, in a personal injury case, to disregard the uncontroverted testimony from the experts for both parties that the plaintiff suffered some injury as a result of the accident in question." *Smith v. Putter,* 832 A.2d 1094, 1102 (Pa.Super.2003) (Bender, J. concurring and dissenting (quoting *Mano,* 738 A.2d at 497)) (emphasis added).

¶ 17 In so holding, our Courts have distinguished the jury's obligation to accept uncontroverted expert testimony that the defendant caused the plaintiff's injuries, however minor, from its prerogative to withhold an award of damages on the basis that the plaintiff's injuries are too minor to be compensable. *Compare Majczyk v. Oesch,* 789 A.2d 717, 722–25 (Pa.Super.2001) (*en banc*) (affirming the jury's prerogative to determine that minor injuries caused by a defendant's negligence may not be compensable) *with Hyang v. Lynde,* 820 A.2d 753, 756 (Pa.Super.2003) (concluding that jury must find defendant's negligence to be legal cause of even minor injuries where both parties' expert witnesses agree on causation). In *Andrews,* we explained this distinction in practical terms:

> [W]e conclude the jury must find the accident was a substantial cause of at least some injury, where both parties' medical experts agree the accident caused some injury. While the jury may then find the injuries caused by the accident were incidental or non-compensable and deny damages on that basis, the jury may not simply find the accident did not "cause" an injury, where both parties' medical experts have testified to the contrary.

\* \* \* \* \* \*

Here, both parties' medical experts agreed that Appellee sustained some injury as a result of the accident. Therefore, the jury was not permitted to disregard the uncontroverted evidence of causation and find Appellant's negligence was not a substantial factor in

causing at least some injury to Appellee. Had the jury found the accident caused some injury to Appellee, but declined to award damages because the jury concluded the injury was so minor as to be noncompensable, we would not have disturbed their verdict. *See Majczyk, supra. See also Davis v. Mullen*, 565 Pa. 386, 773 A.2d 764 (2001) (holding jury may refuse to award damages for pain and suffering even-though jury found defendant's negligence caused plaintiff injury). However, the jury's verdict that Appellee was not "injured" in the accident goes against the weight of the competent evidenced adduced by both parties' medical experts at trial.

*Andrews*, 800 A.2d at 964–65 (some citations omitted). We have reaffirmed *Andrews*' rationale in a host of subsequent decisions. *See Kraner v. Kraner*, 841 A.2d 141, 145–46 (Pa.Super.2004); *Smith v. Putter*, 832 A.2d 1094, 1098–99 (Pa.Super.2003); *Campagna*, 829 A.2d at 329–30 (Pa.Super.2003); *Lemmon v. Ernst*, 822 A.2d 768, 770–71 (Pa.Super.2003); *Hyang*, 820 A.2d at 754–55 (affirming grant of new trial in part where parties' experts agreed the defendant's acts caused some of plaintiff's injuries). *But see Peterson v. Shreiner*, 822 A.2d 833, 837–39 (Pa.Super.2003) (reversing grant of new trial and reinstating verdict where "there was simply no 'concession' by the defense that Mrs. Peterson suffered some injury as a result of the accident").

¶ 18 In this case, the defense expert's concession of causation was clear and unequivocal. On cross-examination, the witness, Dr. Charles J. Burke, expressed his general opinion as follows:

Q. Doctor, just so I understand it, there is no doubt in your mind that Matthew did sustain an injury in this accident of June 9, 1993.

A. According to his medical records and all that he went through, *I would say that there's no doubt that there was injury sustained to his neck and back.*

N.T., Videotape Deposition of Charles J. Burke, III, M.D., at 65 (emphasis added). Although the parties' experts disagreed on the extent of the injuries sustained, and Burke did not concede causation of the degenerative disc disease and spinal stenosis claimed by the Pentareks, he did concede causation of soft tissue injury:

Q. And Doctor Thornton conducted a physical examination; isn't that correct?

A. That's correct.

Q. And that physical examination it [sic] indicated that there was [sic] muscle spasms. And are muscle spasm an objective way to diagnose an injury?

A. That's correct.

Q. There's no doubt, is there Doc, at least at this point in time, that Matt Pentarek did sustain injury in the automobile accident of June 9, 1993?

A. That's correct.

Q. And in fact, what did happen is that Doctor Thornton referred Matt for physical therapy, isn't that correct?

A. That's correct

Q. And that's standard practice when you have an injury to your neck which would be a soft tissue injury?

A. That's correct.

N.T., Videotape Deposition of Charles J. Burke, III, M.D., at 39–41.

¶ 19 Under virtually identical circumstances, our Courts have recognized that a jury may not deny causation as to those injuries the defense expert conceded. *See Hyang*, 820 A.2d at 756–57 (granting new trial on damages for minor injuries sustained by plaintiff where both parties'

medical experts agreed that minor injuries were caused in vehicle collisions at issue, disagreeing only as to cause of major injuries). We find this case materially indistinguishable from *Hyang*. *See id.* at 755–56. We conclude accordingly that the same disposition is in order here. Thus, we affirm the judgment as it relates to Matthew Pentarek's claims of degenerative disc disease and spinal stenosis. We reverse the judgment as it relates to soft tissue injuries conceded by Dr. Burke and remand for a new trial limited to damages for soft tissue injuries sustained by Matthew Pentarek and any derivative loss of consortium that may have been sustained by Connie Pentarek.

¶ 20 Judgment of May 28, 2003, **AFFIRMED IN PART, REVERSED IN PART**. Order of June 3, 2003, **VACATED**. Case **REMANDED** for new trial limited to damages. Jurisdiction **RELINQUISHED**.