**Rivers v. Burger**

*Edward Chacker,* for plaintiff.
*David Rohde,* for defendant.

SYLVESTER, *J.,* March 30, 2005—

## FACTUAL AND PROCEDURAL HISTORY

The above-captioned matter was tried before the undersigned sitting with a jury on August 2, 2004 through August 4, 2004. The facts adduced at trial showed that on August 10, 2001, plaintiff Gladys Rivers was driving on Ditman Street in Philadelphia when she stopped approximately five feet behind a truck, which was stopped for a red light. While stopped, her vehicle was struck in the rear by a vehicle being driven by the defendant, James Burger. The impact pushed plaintiff into the vehicle in

front of her. Although plaintiff testified that the defendant told her that he thought the light was green, defendant testified that the accident occurred when his foot slipped off the brake as he was looking on the floor for his sunglasses. Whatever the reason, the defendant stipulated to liability for causing the rear-end collision.

Plaintiff testified that her body went backwards, forward and backwards again when struck by defendant's vehicle. Immediately following the accident, plaintiff drove home where she put ice on her shoulder and neck. When she could barely get out of bed the next morning, plaintiff went to the emergency room at Frankford Hospital, complaining of pain in her neck, back, right shoulder and arm. She was treated and released with instructions to see her family doctor. Plaintiff's physician, Dr. Richard Cautilli, treated her for the pain with a series of epidural injections and sent her for physical therapy. Ms. Rivers' medical records showed physical injuries to her neck and back, resulting in radiculopathy and injuries to her nerves, and disc protrusions at C5 and C6. Defendant's medical expert, Dr. Edward Resnick, testified that Ms. Rivers sustained strains in her neck and back as a result of the motor vehicle accident. Plaintiff, who was employed as an assistant manager with Strauss Discount Auto at the time of the accident, testified that she was unable to work for a period of six months due to the injuries she sustained in the rear-end collision.

On August 5, 2004, the jury returned a verdict in favor of the defendant, finding that the defendant's conduct was not a substantial factor in causing any injury to Ms. Rivers. On August 12, 2004, plaintiffs filed a motion for post-trial relief on grounds that the verdict was

against the weight of the evidence where both parties' medical experts agreed that Ms. Rivers was injured as a result of the rear-end collision with defendant. On January 6, 2005, this court granted plaintiffs a new trial on the issue of damages. Unfortunately, the grant of post-trial relief did not occur within 120 days of the filing of the motion for post-trial relief, and, thus, was a legal nullity. As a result of the confusion caused by the late grant of post-trial relief by this court, both parties filed notices of appeal.

## LEGAL DISCUSSION

A new trial should be awarded where a jury's verdict is so contrary to the evidence as to shock one's sense of justice, and the award of a new trial is imperative so that right may be given another opportunity to prevail. *Craft v. Hetherly,* 700 A.2d 520 (Pa. Super. 1997); *Randt v. Abex Corp.,* 448 Pa. Super. 224, 671 A.2d 228 (1996). Indeed, it is the duty of a trial court to grant a new trial when it believes the verdict was against the weight of the evidence and resulted in a miscarriage of justice. *Burchard v. Seber,* 417 Pa. 431, 438, 207 A.2d 896, 899 (1965). A trial court has broad discretion to grant a new trial, and this decision should not be disturbed absent an abuse of that discretion or an error of law. *Harman ex rel. Harman v. Borah,* 562 Pa. 455, 756 A.2d 1116, 1121 (2000). Although decided too late, this court properly granted post-trial relief in the form of a new trial on the issue of damages, where both plaintiffs' and defendant's medical experts, while in disagreement regarding the extent of Ms. Rivers' injuries from the motor vehicle accident, nevertheless, agreed that she was injured as a result thereof.

At trial, plaintiff introduced her medical records documenting the injuries she sustained as a direct result of the accident, as well as the testimony of her treating physician, Dr. Richard Cautilli, a board-certified orthopedic surgeon. Dr. Cautilli testified in pertinent part as follows:

"Q. February 18, 2002. And up until that time, doctor, she had been out of work and do you have an opinion, doctor, to a reasonable degree of medical certainty as to the cause of her being out of work and what was the cause?

"A. Yes.

"Q. What was that?

"A. Low back pain, radiculopathy and cervical pain with radiculopathy.

"Q. Was that as a result of the accident of August 10, 2001?

"A. Yes.

"Q. The automobile accident?

"A. Yes."

Later on in his testimony, Dr. Cautilli reiterated that there was no doubt in his mind that Ms. Rivers sustained these injuries as a direct result of the accident.

Defendant's medical expert, Dr. Edward Resnick, also a board-certified orthopedic surgeon, testified in pertinent part as follows:

"Q. Now, doctor, as a result of your examination, did you reach any conclusions or opinions with regard to her medical condition when you examined her?

"A. I did.

"Q. And could you state to the ladies and gentlemen of the jury your opinion with regard to that examination?

"A. Yes. If I may refer to my report for accuracy.

"Q. At any point, doctor, if you need to refer, please do.

"A. Thank you. I made two diagnoses that day. One *was of strains of her neck and back, which she had sustained on the date of her accident, August 10, 2001,* from her history; that is, from what she had told me. I said that they had objectively resolved, which means I felt that there was no evidence on my examination of anything left from those injuries physically. And the second diagnosis I made was of a possible minor right shoulder impingement syndrome, which means, for practical purposes, what people commonly call tendonitis or bursitis of the shoulder. Those were the diagnoses."

Later on in Dr. Resnick's testimony, he again stated that he could say "with a reasonable degree of medical certainty that the diagnosis does include strains of her neck and back, which I felt that she had sustained in that accident in August of 2001 on the basis of history and the records which I had been reviewing, and I felt again that they had objectively resolved or recovered."

In *Pentarek v. Christy,* 854 A.2d 970 (Pa. Super. 2004), a case which also involved a rear-end motor vehicle accident, both the plaintiff's and the defendant's medical experts concluded that the plaintiff sustained some injury as a result of the accident. The jury nevertheless returned a verdict in favor of the defendant finding that, while the defendant was negligent, his negligence was

not a substantial factor in bringing about the plaintiff's injuries. The Superior Court vacated the jury's verdict and remanded the case for a new trial on damages, reasoning that "[w]here there is no dispute that the defendant is negligent and both parties' medical experts agree the accident caused *some* injury to the plaintiff, the jury may not find the defendant's negligence was not a substantial factor in bringing about at least *some* of plaintiff's injuries." *Id.* at 976. (emphasis in original) In vacating the verdict, the *Pentarek* court held that, in view of the evidence, the verdict was contrary to the weight of the evidence adduced at trial:

"Here, both parties' medical experts agreed that appellee sustained some injury as a result of the accident. Therefore, the jury was not permitted to disregard the uncontroverted evidence of causation and find appellant's negligence was not a substantial factor in causing at least some injury to appellee. Had the jury found the accident caused some injury to appellee, but declined to award damages because the jury concluded the injury was so minor as to be noncompensable, we would not have disturbed their verdict. . . . However, the jury's verdict that appellee was not 'injured' in the accident goes against the weight of the competent evidence adduced by both parties' medical experts at trial . . . ." *Id.* at 977. (citations omitted)

The instant case is indistinguishable in any significant way from *Pentarek* in that the defendant stipulated that his negligence caused the rear-end collision and both parties' medical experts agreed that Ms. Rivers sustained some injury as a result of the accident. Indeed, the medical experts disagreed only to the severity of her injuries.

In view of these circumstances, the jury's determination that defendant's conduct was not a substantial factor in bringing about any of Ms. Rivers' injuries bears no rational relationship to the evidence adduced at trial. Accordingly, the jury's verdict should be vacated and a new trial awarded on damages, as the verdict was clearly against the weight of the evidence.

Finally, this court properly excluded as irrelevant, evidence concerning another accident involving plaintiff which occurred approximately two days after the motor vehicle accident in question. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401. Relevancy is not an inherent characteristic of any item of evidence, but exists only as a relation between an item of evidence and a matter properly provable in the case. *Blancha v. Raymark Indus.,* 972 F.2d 507, 514 (3d Cir. 1992).

The subsequent accident occurred at work where Ms. Rivers was hit in the chin with a brake rotor. Dr. Cautilli, plaintiffs' medical expert, stated that this second incident was unrelated to her injuries from the motor vehicle accident, while defendant's medical expert failed to even make mention of this incident in his testimony. Accordingly, any injury which Ms. Rivers may have sustained in this second accident, and/or its connection to the medical complaints at issue in this case, was unsupported by any medical testimony. Thus, this court properly excluded this evidence as irrelevant. See *Cacurak v. St. Francis Medical Center,* 823 A.2d 159 (Pa. Super. 2003) (evidence that patient upon whom surgeon accidentally performed un-

necessary laminectomy was receiving workers' compensation benefits for disability resulting from unrelated neck injury was irrelevant and inadmissible for purposes of action against the medical center and physician who were responsible for the surgical mistake).

In view of the foregoing, it is the opinion of this court that the jury's verdict should be vacated on grounds that it was against the weight of the evidence and the case remanded for a new trial on damages only.