**Frank ANGELO and Phyllis A. Lawrence, Co–Administrators for the Estate of Christopher Lee Angelo, Appellants,**

v.

**Stephen G. DIAMONTONI, M.D. and Associates Family Practice and Madhumita Sadhukhan, M.D., Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 12, 2005.

Filed March 31, 2005.

Dan M. Brookhart, Lancaster, for appellant.

Wiley P. Parker, Lebanon, for Diamontoni and Associates.

BEFORE: BENDER, GANTMAN, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Frank Angelo and Phyllis A. Lawrence, Co–Administrators for the Estate of Christopher Lee Angelo (Administrators), appeal the judgment entered on a verdict for the defendant physicians. Although the jury found that the defendants had

been causally negligent, it denied liability on grounds that plaintiffs' decedent had been more than 50% contributorily negligent in bringing about his own injuries. Administrators contend that the evidence adduced at trial failed to substantiate the defense of contributory negligence and that, consequently, the trial court erred in so instructing the jury. Because judgment was entered in accordance with Pa.R.C.P. 227.4, the trial court could not order a new trial, but has opined in its Rule 1925(a) opinion that the Administrators' argument is correct. We concur in the trial court's assessment. Accordingly, we vacate the Rule 227.4 judgment.

¶ 2 This matter arises out of the untimely death of Christopher Lee Angelo (Christopher), the Administrators' twenty-three-year-old son who died from Type I Diabetes the day after the defendant physicians failed to diagnose his illness. Christopher had first consulted defendant Sadhukhan in connection with his symptoms on July 19, 2001, complaining of vomiting, blurred vision, dry mouth, lightheadedness, and inability to work. Dr. Sadhukhan diagnosed him with influenza and allowed him to go home. She also noted, however, that Christopher had a family history of diabetes and had lost 22 pounds since his previous visit, weighing only 144 pounds at 6'1" tall. She suggested to Christopher that he obtain a fasting blood draw within the next month, but did not order a random blood sugar screening. On August 13, 2001, less than one month later, Christopher again appeared at Dr. Sadhukhan's office complaining of nausea and vomiting. On examination, Dr. Sadhukhan determined that although Christopher did not suffer a fever, he did exhibit an elevated heart rate of 100 beats per minute. She diagnosed gastroenteritis and again sent Christopher home, where he died the following day of diabetic ketoacidosis.

¶ 3 At trial, both parties called expert witnesses to testify concerning the conformity of Dr. Sadhukhan's treatment of Christopher's symptoms and condition with the standard of care for family practice physicians. Neither Dr. Sadhukhan nor the parties' experts testified that Christopher failed to comply with medical direction or that he had contributed to his own injuries in any other way. Moreover, the parties stipulated that the defendants would not offer Dr. Sadhukhan's handwritten note suggesting a fasting blood draw to show contributory negligence in exchange for the Administrators' agreement not to introduce circumstantial evidence that Dr. Sadhukhan had written the note only after she learned of Christopher's death. At the conclusion of testimony, the trial court, the Honorable Paul K. Allison, instructed the jury, over objection, on the doctrine of contributory negligence and provided the jury with special interrogatories. The jury responded to the interrogatories, finding that the defendants had been negligent and that their negligence had been a substantial factor in bringing about Christopher's harm but that Christopher had been more than 50% responsible for his own injuries. Although the Administrators filed a Rule 227.1 post-trial motion asserting the trial court's error in instructing the jury on contributory negligence, the trial court failed to rule on the motion within the 120–day period allowed by Rule 227.4. Accordingly, the defendants moved for imposition of judgment by the prothonotary, divesting the trial judge of jurisdiction to affect the disposition further. Nevertheless, following Administrators' filing of the notice of appeal, Judge Allison filed a Rule 1925(a) opinion, urging this Court to vacate the judgment and remand the matter for new trial on grounds that he had erred in charging the jury on contributory negligence and prejudiced Administrators' case.

¶ 4 Administrators now raise the following questions for our review:

1. WHETHER THE TRIAL COURT ERRED IN CHARGING THE JURY ON THE ISSUE OF CONTRIBUTORY NEGLIGENCE WHERE THE DEFENSE PRESENTED AT TRIAL WAS LIMITED TO THE GROUNDS THAT DEFENDANTS DID NOT VIOLATE THE APPLICABLE STANDARD OF CARE, AND WHERE THERE WAS INSUFFICIENT EVIDENCE PRESENTED THAT PLAINTIFFS' DECEDENT WAS NEGLIGENT?

2. WHETHER THE TRIAL COURT ERRED IN CHARGING THE JURY ON THE ISSUE OF CONTRIBUTORY NEGLIGENCE WHERE THERE WAS NO EVIDENCE PRESENTED AT TRIAL THAT ANY ALLEGED NEGLIGENT ACTS OF PLAINTIFFS' DECEDENT CAUSED HIS PREMATURE DEATH?

3. WHETHER THE TRIAL COURT'S ERROR IN CHARGING THE JURY ON CONTRIBUTORY NEGLIGENCE PREJUDICED PLAINTIFFS, CREATING AN INJUSTICE, AND WARRANTS A NEW TRIAL?

Brief for Appellant at 6.

¶ 5 Before proceeding, we note that Administrators seek an award of new trial based on the trial court's alleged error in instructing the jury. Although they sought such an award from the trial court, imposition of judgment pursuant to Pa. R.C.P. 227.4 deprived the trial court of an opportunity to act. Thus, for purposes of determining the appropriate scope and standard of review, we deem their motion for new trial denied. *See Pentarek v. Christy,* 854 A.2d 970, 975 (Pa.Super.2004) (deeming motion for new trial denied where party entered judgment pursuant to Rule 227.4).

¶ 6 "Our standard of review [of an order] denying a motion for a new trial is to decide whether the trial court committed an error of law which controlled the outcome of the case or committed an abuse of discretion." *Id.* We will grant a new trial based on error in the court's charge if, upon considering all the evidence of record we determine that the jury was "probably misled" by the court's instructions or that an omission from the charge amounted to "fundamental error." *Price v. Guy,* 558 Pa. 42, 735 A.2d 668, 671 (1999); *see also Carpinet v. Mitchell,* 853 A.2d 366, 371 (Pa.Super.2004). Conversely, "[a] jury instruction will be upheld if it accurately reflects the law and is sufficient to guide the jury in its deliberations." *Cruz v. Northeastern Hosp.,* 801 A.2d 602, 611 (Pa.Super.2002).

¶ 7 In accordance with this prescription, "all issues which are relevant to pleadings and proof may become the subject of jury instructions." *Carpinet,* 853 A.2d at 371. Although the court's instructions "should not exclude any theory or defense that has support in the evidence," *McClintock v. Works,* 716 A.2d 1262, 1266 (Pa.Super.1998), the court may charge "only on the law applicable to the factual parameters of a particular case and it may not instruct the jury on inapplicable legal issues." *Cruz,* 801 A.2d at 611. Consequently, where the record includes no evidence to satisfy the elements of a particular legal doctrine, the court may not discuss that doctrine in its charge. *See Speer v. Barry,* 349 Pa.Super. 365, 503 A.2d 409, 412 (1986) ("Where there is no evidence of contributory negligence, ... no instruction to the jury on contributory negligence need be given.").

¶ 8 Significantly, our Supreme Court's conclusion in *Price* that reversible error may be shown on the basis of a "probability" marks a departure from prior caselaw that required a finding of greater certainty. *See Price,* 735 A.2d at 672 (Newman, J. concurring) (quoting *Voitasefski v. Pittsburgh Railways Co.,* 363 Pa. 220, 69 A.2d 370, 373 (1949) (requiring that order granting new trial be grounded in finding that jury was "palpably misled" by trial court's charge)). Recognizing the resulting diminution in the appellant's burden of persuasion, the Court has explained that

> the standard of review for a faulty jury charge must be expressed in terms of probabilities, as there is simply no way to determine whether a juror was, in fact, misled. A reviewing court has no means to access a juror's actual thought processes to determine whether the juror "palpably" relied on the faulty jury charge in reaching a decision. Accordingly, we believe that the standard of review in this context is best articulated in terms of probabilities.

*Price,* 735 A.2d at 671 n. 4. Accordingly, where as here, Appellants assert that the trial court erred in charging the jury on contributory negligence, they may establish grounds for relief by demonstrating, first, absence from the record of sufficient evidence to sustain that defense and, second, that the court's charge on that point "probably misled" the jury. *Id.; Cruz,* 801 A.2d at 611.

¶ 9 Administrators argue this issue in support of their first two questions, contending that the record is devoid of evidence that Christopher had any role in bringing about his own death. Brief for Appellant at 11. Administrators argue, in addition, that even had such evidence been produced, no further evidence established Christopher's conduct as a "substantial factor" in causing his death. Brief for Appellant at 14. The trial court concurred in the Administrators' assessment, observing that Sadhukhan had based her defense on her own conformity with the requisite standard of care. Trial Court Opinion, 9/7/04, at 23. Accordingly, neither she nor the defense expert, Dr. Edward Zurad, testified that Christopher's conduct was unreasonable in any way. Trial Court Opinion, 9/7/04, at 23.

¶ 10 We recognize, as Dr. Sadhukhan asserts, that "where there is any evidence which alone could justify an inference of a disputed fact, such dispute must go to the jury, no matter how strong or persuasive may be the countervailing proof." *McCullough v. Monroeville Home Ass'n,* 270 Pa.Super. 428, 411 A.2d 794, 795–96 (1979). Thus, any evidence of contributory negligence mandates submission of the issue to the jury. *See id.* Nevertheless, the burden to establish the plaintiff's conduct as a contributing factor in his injury rests with the defendant, who must show both the negligence of the conduct alleged and the causal relationship of that conduct to the injuries for which damages are sought. *See Pascal v. Carter,* 436 Pa.Super. 40, 647 A.2d 231, 233 (1994). Our Courts have distilled these elements as follows:

> Contributory negligence is conduct on the part of a plaintiff which falls below the standard [of care] to which he should conform for his own protection and which is a legally contributing cause, cooperating with the negligence of the defendant, in bringing about the plaintiff's harm. Contributory fault may stem either from a plaintiff's careless exposure of himself to danger or from his failure to exercise reasonable diligence for his own protection.

*Columbia Med. Group, Inc. v. Herring & Roll, P.C.,* 829 A.2d 1184, 1192 (Pa.Su-

per.2003) (quoting *Thompson v. Goldman,* 382 Pa. 277, 114 A.2d 160, 162 (1955)).

¶ 11 Dr. Sadhukhan attempts to satisfy that standard countering that, notwithstanding the absence from her own case of testimony ascribing contributory negligence to Christopher, Administrators' own expert testified that Christopher was obliged to monitor his own health as part of the doctor-patient relationship. Brief for Appellee at 6–7. Sadhukhan argues that evidence suggesting Christopher's purported lack of diligence in self-monitoring, although slight, enabled the jury to find his actions the cause of his death. Specifically, Sadhukhan contends that Christopher's failure to return to her office before August 13 and to obtain a fasting blood draw in the interim constituted contributory negligence because had the test been conducted it would have revealed Christopher's diabetes. Brief for Appellee at 8–9. In support, Sadhukhan cites our decision in *Levine v. Rosen,* 394 Pa.Super. 178, 575 A.2d 579 (1990).

¶ 12 We find *Levine* inapposite and Sadhukhan's analysis incomplete. Assuming *arguendo* that she has correctly stated the patient's duty and standard of care to self-monitor, she fails to show, either by analogy to *Levine* or by reference to other factors, that Christopher breached the requisite standard. In *Levine,* we reviewed a judgment entered in favor of a gynecologist who failed to diagnose the plaintiff wife's breast cancer during a routine visit. *See* 575 A.2d at 581. In that case, Mrs. Fay Levine alleged that her doctor should have diagnosed and treated her condition following a visit in July 1980 when, she alleged, she appeared at his office suffering a sudden inversion and discoloration of her right nipple. *See id.* at 580. Significantly, however, there was no evidence that Mrs. Levine reported her symptoms. *See id.* When her doctor treated her visit as routine, she then waited over a year, until October 1981, before consulting him again. *See id.* Only in December 1981, after the defendant had failed to express any concern for her condition during this second visit did she seek a mammogram, which revealed a mass in her breast later determined to be malignant. *See id.* Although the plaintiffs asserted that the record did not support the trial court's charge on contributory negligence, we determined that Mrs. Levine's failure to report her symptoms, coupled with her failure to seek a mammogram for approximately seventeen months, established legally sufficient grounds on which to establish the defense. *See id.* at 581. Although of limited persuasiveness, this evidence, if accepted by the factfinder, would demonstrate Mrs. Levine's breach of duty.

¶ 13 The circumstances in this case, however, do not satisfy that second crucial element of the test for contributory negligence. Unlike Mrs. Levine, Christopher reported his symptoms to Dr. Sadhukhan on two occasions and she responded each time with a diagnosis, albeit erroneous. N.T., 3/22/04, at 39–40, 225. On neither occasion does the evidence suggest that either Christopher or Dr. Sadhukhan treated the visit as routine. In point of fact, Christopher appeared at the doctor's office on August 13 reporting nausea, vomiting, diarrhea, sweating and chills over the prior two hours. N.T., 3/22/04, at 225. This factor negates the suggestion that Christopher, like Mrs. Levine, breached a duty in failing to report his symptoms. Moreover, unlike Mrs. Levine, Christopher left each visit assured of a diagnosis by a medical professional who was ostensibly more knowledgeable than he under the circumstances, N.T., 3/22/04, at 217, 228, and on whose expertise he was entitled to rely, *cf. Gorski v. Smith,* 812 A.2d 683, 703 (Pa.Super.2002). His questions had

been asked and answered and his duty as a patient satisfied. *Cf. id.* (holding that client was entitled to rely on exercise of reasonable care by attorney and under no duty to guard against his negligence). *Levine* does not impose a greater duty upon the patient.

¶ 14 Similarly, limitations on the scope of the patient's duty undermine any inference that Christopher was negligent in failing to obtain a fasting blood draw prior to his death. Although Christopher's chart suggests that Dr. Sadhukhan recommended a fasting blood draw during the July 19 appointment, by her own admission she attached no urgency to the recommendation, allowing that he might obtain it any time within the following month. N.T., 3/22/04, at 50. On the date of Christopher's death, just three weeks later, that month had not elapsed. Were we to hold Christopher's failure to obtain his blood draw sooner a breach of duty subject to a charge on contributory negligence, we would effectively hold him to a higher standard of care to understand the medical urgency of the test than the physician who had suggested it. *Cf. Gorski,* 812 A.2d at 703. Dr. Sadhukhan cites no authority for imposing so high a burden on a patient, nor are we aware of any.

¶ 15 Questions of duty and breach aside, we find no evidence to establish that Christopher's failure either to obtain a fasting blood draw or to consult Dr. Sadhukhan again earlier during the month of August were substantial factors in causing his death. *See Sullivan v. Wolson,* 262 Pa.Super. 397, 396 A.2d 1230, 1234 (1979) ("A plaintiff's antecedent negligence will not bar his recovery unless his negligence contributed to his injury as a proximate cause."). Although another conclusion might inhere had Christopher died before seeing Dr. Sadhukhan a second time, his second visit, at which Sadhukhan failed to

order even a random blood draw, supersedes as a matter of law any delay chargeable to Christopher in failing to schedule an earlier follow-up consultation or to obtain a fasting blood draw. Having enlisted the doctor's assistance on a second occasion and having apprised her again of his symptoms, Christopher accepted her diagnosis of gastroenteritis and went home. The record provides no evidence that he did or could have done anything thereafter to have assured protection from a malady the doctor did not discern. As we have observed, "[i]t is not contributory negligence to fail to guard against the lack of ordinary care by another." *Gorski,* 812 A.2d at 703 (quoting *Sullivan,* 396 A.2d at 1234).

¶ 16 Having concluded that the record does not offer sufficient evidence to allow a charge to the jury on contributory negligence, we need only discern whether the charge provided here "probably misled" the jury. *See Price,* 735 A.2d at 671. Under the circumstances at hand, we do so without hesitation. As we have discussed, the court's instruction introduced to the jury a legal concept unsubstantiated by the evidence adduced. As the jury's verdict slip attests, the jury rendered a defense verdict not on the basis of the standard of care defense advanced by Dr. Sadhukhan, but expressly on the ground that Christopher was contributorily negligent. Under these circumstances, we conclude that the "probability" standard established by *Price* is wholly fulfilled. *See Pascal,* 647 A.2d at 233 (concluding summarily that erroneous instruction on contributory negligence influenced jury's verdict where substantial evidence militated for finding of liability and evidence was not sufficient for issuance of contributory negligence charge).

¶ 17 Accordingly, we accept the invitation of the trial court to vacate the judg-

ment entered pursuant to Rule 227.4 and remand this matter for a new trial.

¶ 18 Judgment **VACATED.** Case **RE-MANDED** for new trial. Jurisdiction **RE-LINQUISHED.**