# Bryan v. Moxley

*Anthony J. Sciolla Jr.,* for plaintiffs.
*John R. Brown* and *Michael T. McDonnell III,* for defendant.

BURR, *J.,* November 22, 2005—The plaintiff, Sharon Bryan, only, has appealed from the order denying her motion for a new trial in this automobile negligence action in which liability was admitted and the jury found causation against the defendant, but awarded no damages.[1]

The accident in question occurred at approximately 3:29 p.m. on October 12, 2002 when the car driven by the plaintiff was struck in the rear by the defendant's vehicle at the intersection of Waverly Road and Baltimore Pike in Morton, Delaware County, Pennsylvania. (Complaint, ¶7; 5/2/05 N.T. 61-62.)[2] Plaintiff complained of pain resulting from strains and sprains to her neck, chest, back and knee sustained from the impact. (Complaint, ¶11.) Plaintiff said that, at the time of impact, she felt a "hard blow" in the back of her car and, despite wearing a seatbelt and shoulder harness, she was "thrown forward and backward" inside the car and that her chest had hit the steering wheel, her knees had "hit onto the

---

1. The claims of all other plaintiffs were dismissed or amicably resolved prior to trial.

2. The trial was completed in the course of one day and the notes of testimony were published in one transcript booklet. Therefore, all citations to the notes of testimony refer to the transcript dated May 2, 2005.

dashboard," and "by flinging myself back, I injured my back." (N.T. 62.) Plaintiff said that paramedics took her directly from the car and to a local hospital where she said she complained to emergency room personnel of pain in her chest, head and knees. (N.T. 63.) Plaintiff testified that she had been given a chest X-ray and "500 Motrin" and then discharged. (N.T. 64.) Plaintiff indicated that she had not seen her family doctor afterward, but had taken a co-worker's recommendation to go instead to the Right Choice Medical Center in West Philadelphia for treatment. (N.T. 64-65.)[3] Plaintiff's treatment at Right Choice was under the auspices of Arthur M. Lerner M.D. and Chiropractor, Greg Levin D.C.

Plaintiff described her treatment at Right Choice as consisting of lying under a warm lamp for a period of time, and of undergoing massage all over her body and lower back with an implement she called a "claw," and of the cracking of her neck. (N.T. 67-68.) Plaintiff said she went to Right Choice for these treatments three times a week initially, then twice a week and "when I'm almost restored," once a week. (N.T. 68.) Plaintiff testified that additional treatments which she received later on were acupuncture and the "wave" table on which she would lie and feel "a wave of things that were underneath." (N.T. 69.) Plaintiff indicated that after three months into this therapy she felt much better, that her body and joints were not aching, and that she was feeling discomfort but not pain. (N.T. 70.) When asked to

---

3. Although the transcript repeatedly refers to this establishment as "Bright" Choice Medical Center, its correct appellation, as obtained from the documentary evidence, is "Right" Choice Medical Center. See trial exhibit P-2, passim.

use a pain scale from zero to 10 to rate herself at this point, plaintiff replied, "maybe a zero or a one." (N.T. 70.)

Plaintiff testified that she missed only the Monday after the accident of work as a private duty nursing assistant for a woman she visited at home and for whom she prepared breakfast, dispensed medication and gave assistance in the use of a walker when the need arose for the patient to use the bathroom and undertake other activities. (N.T. 61, 67, 73.) Plaintiff said she worked Fridays through Mondays from 10 p.m. through 8 a.m. (N.T. 71.) Plaintiff testified that during the three months following the accident, her husband had to help her with the household chores and "the whole mom thing," and that at the end of that period she started feeling much better. (N.T. 72.) Plaintiff testified that during the time of her treatment, sitting was difficult for her at church and when going out for dinner, and that she didn't go dancing. (N.T. 74.) Plaintiff stated that when she finished her treatment at the end of February of 2003, or four and a half months following the Columbus Day accident, she was totally healed. (N.T. 73.) Plaintiff testified at trial that she is fully recovered from her injuries and that she is doing everything she used to do before the incident occurred. (N.T. 72-73.)

Plaintiff testified on cross-examination that she did not get out of her car before the paramedics came, and disagreed with her prior deposition testimony merely that she did not "remember" doing so in order to assess damage to her vehicle (N.T. 78-79.) Plaintiff said that she had not seen her car before her husband had taken it for repairs, and agreed that her husband was not being pre-

sented as a trial witness to attest to any damage thereto. (N.T. 79-80.) It is also here noted that plaintiff presented no post-accident pictures of the vehicle.

The defense contradicted plaintiff's testimony that her car sustained a "hard hit" and heavy impact in the incident with plaintiff's emergency room treatment report which stated, "two car collision," "low impact," and which noted "low" as the degree of force with which plaintiff's vehicle had been struck. (N.T. 81; trial exhibit P-1.) Plaintiff responded that she did not remember using those words with medical personnel, and that she had told them only that she had been in an accident. (N.T. 82.) With regard to plaintiff's assertion that she was suffering from "pretty severe pain" in her chest and head after the accident, the defense confronted her with written indication in the same emergency room record that the severity of her pain at the time had been "mild." (N.T. 83; trial exhibit P-1.) Plaintiff offered no explanation for the discrepancy, and tellingly interjected at this point that the pain in her chest was "heart pain" from anxiety, as opposed to muscle pain, from hitting the steering wheel for which the X-ray had been taken. (N.T. 84, 90.) Plaintiff also denied having the chronic headaches, or "CH," that appeared in the section of her emergency room report relating her medical history and claimed again that the headache she had complained of at the time had resulted from the accident. (N.T. 84-85; trial exhibit P-1.) The defense further confronted plaintiff's claim of severe low back pain incurred in the impact with the statement, "denies back pain" that was recorded on the emergency room report. (N.T. 87; trial exhibit P-1.) Plaintiff replied that her back pain grew worse later on as often happens in

such circumstances; that she did have back pain in the emergency room; and that she did not know "why would anyone say what they say" otherwise. (N.T. 87.)

The plaintiff offered no expert testimony, but her medical records were read to the jury. (N.T. 100-106.) Plaintiff's counsel's remarks in this instance included statements that, "[t]he patient was brought to the emergency department via ambulance from a motor vehicle; that plaintiff was a 'restrained driver' who suffered 'no loss of conscious[ness]'; '[c]ar hit from behind', '[n]egative airbag deployment'; and that she had been placed in a [neck] collar." (N.T. 100; trial exhibit P-1.) The above-cited emergency room report stated further that plaintiff had "initial complaints of headache and neck pain," that she had received X-rays of her chest and neck area, and bore mention that plaintiff's primary complaint of pain was of the "chest" area. (N T. 101; trial exhibit P-1.) Plaintiff's counsel proceeded to read plaintiff's Right Choice intake report prepared by Dr. Lerner and which reiterated plaintiff's description of the accident and noted tenderness and spasm in her neck and lower back. (N.T. 101-102; trial exhibit P-2.) This report also reflects that flexion and extension tests of the mobility of plaintiff's legs, neck and lower back yielded results in the normal range, and a diagnosis of cervical, thoracic and lumbar strain and sprain, as well as strain and sprain of the left knee. (N.T. 102-104; trial exhibit P-2.) Dr. Lerner prescribed 800 milligrams of Motrin three times a day for pain and 10 milligrams at bedtime of the muscle relaxant Flexeril. (Trial exhibit P-2.)

An intake report dated October 14, 2002 (or two days following the accident) from the Right Choice Chiro-

practor, Greg Levin, can be found among the materials collected at plaintiff's trial exhibit no. 2, and mentioned that manipulation and palpation of the affected areas of plaintiff's musculoskeletal system were positive for pain. (N.T. 104; trial exhibit P-2.) Dr. Levin stated that, with the exception of a flexion range of motion test of the neck area, the results of cervical and lumbar extension and flexion tests were all within the normal range. (Trial exhibit P-2.) This report also mentions that a physiatrist performed a nerve conduction study which yielded negative or normal results. (N.T. 106; trial exhibit P-2.) Plaintiff presented as a third trial exhibit a report of an MRI study done of her lower back which reflected the presence of a disc bulge at the L4-5 level. (N.T. 106.) Nevertheless, plaintiff's trial counsel, recognizing the danger that this anomaly might be regarded as a pre-existing condition, noted that there is no claim in this case of any effect from disc damage resulting from this accident. (N.T. 106.) It is thus clear from review of the medical records presented by the plaintiff that there was no objective evidence supporting the claims of pain said to have resulted from this accident.

The defense presented no expert witness, but the rigorous cross-examination of plaintiff so as to highlight the differences between her testimony and her recorded statements in the emergency room record renders moot any contention that plaintiff's trial evidence was undisputed. The defense also countered plaintiff's testimony regarding the "hard blow" to the back of her vehicle with that of her daughter, Vanessa Bryan, who had been a passenger in the car on the day in question. Ms. Bryan responded in the negative to the query as to whether she

had the opportunity to look at the rear of her mother's car after the accident, and replied, "I don't know" when asked why the emergency room report of her own examination indicated that she had reported "minor or minimal damage" to the car. (N.T. 107-108.) Again, neither party presented pictures of the post-impact condition of the plaintiff's vehicle, nor the testimony of plaintiff's husband, who, both sides agree, actually looked at the vehicle and purportedly had it repaired. Further, and in spite of plaintiff's own testimony that the post-accident discomfort complained of in her chest was "heart pain from anxiety," her attorney argued to the jury that everyone was concerned about plaintiff's chest, of which X-rays had been taken to ascertain whether there were fractures. (N.T. 112.) Counsel argued as well, despite the emergency room report that the chest pain was mild, that the X-rays were taken because the pain was intense. (N.T. 84, 90, 112; trial exhibit P-1.) Nevertheless, plaintiff contended at trial and contends to this day that all of her evidence was thoroughly uncontradicted by the defendant.

The jury decided the question of causation against the defendant, but awarded no damages. Plaintiff's timely filed motion for a new trial was denied, this appeal followed, and plaintiff has submitted the following concise statement of matters complained of on appeal:

"(1) [The] jury's verdict which went against the judge's charge to the jury and the weight of the evidence should be overturned.

"(2) Is the jury's verdict contrary to the Superior Court's opinion in *Elliott v. Ionta,* 869 A.2d 502 (Pa. Super. 2005)?

"(3) Where there is no dispute as to the cause of the accident and injuries, the jury's finding of no damages was against the weight of the evidence and warranted a new trial on damages." (Plaintiff's/appellant's, Sharon Bryan's, concise statement of matters complained of on appeal, p. 1.)

## WEIGHT OF THE EVIDENCE

The concise statement reflects that there is no trial court error here alleged and that the gist of this appeal is plaintiff's belief that the jury's verdict awarding plaintiff no damages was "manifestly" against the weight of the evidence where "the [D]efendant stipulated to liability and the [P]laintiff presented medical evidence which the jury found to be the factual cause of the injuries sustained [by her]." (Plaintiff's motion for a new trial, ¶1.) It is here suggested, however, that plaintiff intended to say that the medical evidence supported the jury's finding of causation and was not the cause of injury itself. In any event, plaintiff averred that the case of *Elliott v. Ionta,* 869 A.2d 502 (Pa. Super. 2005) mandated the granting of a new trial on the weight of the evidence grounds where, as here, the jury found causation but rendered zero damages. *Id. Elliott, supra,* however, involved facts which, although similar to those in the instant action, included a finding by a jury that the actions of the defendant did not cause the plaintiff's injuries where there had been no disagreement between experts from both sides that injury had in fact occurred.

The *Elliott* court, nevertheless, cited to legal authorities more on point with the issue sub judice which established that, "while a jury may find that a plaintiff's inju-

ries are non-compensable despite uncontroverted medical evidence of injury, it may not find that an accident did not 'cause' an injury where liability is not at issue." *Elliott. v. Ionta, supra,* 869 A.2d at 509, citing to *Kraner v. Kraner,* 841 A.2d 141, 145-46 (Pa. Super. 2004) (verdict of no causation was against weight of the evidence where defense expert agreed that plaintiff had suffered injury in the accident); *Andrews v. Jackson,* 800 A.2d 959, 964-65 (Pa. Super. 2002), *appeal denied,* 572 Pa. 694, 813 A.2d 835 (2002) (table) (while a jury may find that the plaintiff's injuries are non-compensable despite uncontroverted medical evidence of injury, it may not find that the accident did not cause an injury where liability is not at issue). The jury in the instant case did find that defendant's conduct was a substantial factor in causing plaintiff's injuries. Her reliance upon *Elliott v. Ionta, supra,* is, therefore, misplaced, as is grounding this appeal on such additional case authorities as: *Criswell v. King,* 575 Pa. 34, 834 A.2d 505 (2003) (remand for consideration of merits of appeal contesting a jury's findings of negligence but of lack of causation); *Pentarek v. Christy,* 854 A.2d 970 (Pa. Super. 2004) (new trial awarded because jury improperly concluded that collision did not cause motorist's injuries despite defense expert's concession that it was the cause thereof); and *Hyang v. Lynde,* 820 A.2d 753 (Pa. Super. 2003), *appeal denied,* 577 Pa. 681, 843 A.2d 1239 (2004) (table) (new trial awarded where defense conceded injury by plaintiff in accident, but jury found lack of causation). (Plaintiff's memorandum of law in support of motion for a new trial, pp. 1-3.)

Plaintiff also contended that the jury ignored an alleged charge to the jury that it must award damages if

causation were found. A court is bound to charge the jury according to law. Such a charge was never issued because it would not have conformed to the law. The jury was charged as follows:

"Now as you know, because negligence has been admitted in this case, you need to focus initially on the concept of that bridge between negligence and damages. As I told you at the outset, that bridge is called factual cause. Before any plaintiff can recover she must establish that the—in this case, the admitted negligence of the defendant as a factual cause in bringing about harm to her . . . if you find that one of the alleged acts of the defendant was negligent and a factual cause of injury— of the harm, that is sufficient to subject the defendant to liability. . . . So you're being asked to determine whether the admitted negligence of the defendant was a factual cause in bringing about any *compensable* harm to Ms. Bryan. . . . If you answered the causation question one [as to causation] yes, then you must go on to answer question two, which deals with the damage aspect of this case. *However, ladies and gentlemen, you should not infer or imply from these instructions I'm about to give you that you are to award damages simply because instructions on that subject are given to you.*" (N.T. 144-47.) (emphasis supplied)

The court went on to define the damages that plaintiff could recover if she met her burden of proof in that regard and concluded this instruction with these remarks:

"An[y] award for these types of damages, *if any,* is not to be determined by what sum you would take to undergo the same adversity. Neither [the] court nor coun-

sel may suggest a figure for these damages to you. On the contrary, this matter is left entirely to you members of the jury. . . ." (N.T. 151.) (emphasis supplied)

Plaintiff took no exception to the wording of the charge, although counsel moved for judgment notwithstanding the verdict at the conclusion of the trial and his motion was denied. (N.T. 152-54, 171.)[4]

Hence, the only viable issue before the court is whether the jury properly found plaintiff's damages not to be compensable, and clearly, the answer is yes. While it is the law of this Commonwealth that victims must be compensated for their losses attributable to the negligence of another, it is also the law that the jury is not obliged to believe that every injury causes pain or the pain alleged. *Majczyk v. Oesch,* 789 A.2d 717, 724 (Pa. Super. 2001); *Boggavarapu v. Ponist,* 518 Pa. 162, 167, 542 A.2d 516, 518 (1988). Where there is no obvious injury, and/or pain is subjective and has no identifiable objective medical source, it must be believed in order to be compensable. *Id; Hawley v. Donahoo,* 416 Pa. Super. 469, 611 A.2d 311 (1992). The existence of compensable pain is an issue of credibility and juries must believe the plaintiff suffered pain before they may award any compensation therefor. *Davis v. Mullen,* 565 Pa. 386, 396, 773 A.2d 764, 769 (2001); *Boggavarapu v. Ponist, supra.* A jury may find for a defendant despite his or her obvious negligence if it does not believe that the injury suffered by a

---

4. Plaintiff has correctly pointed out that the raising only of a judgment n.o.v. motion before the discharge of the jury did not waive this appeal based on weight of the evidence grounds. *Elliott v. Ionta, supra,* 869 A.2d at 504. (Plaintiff's motion for a new trial, ¶3.)

plaintiff was significant or serious enough to warrant compensation. *Andrews v. Jackson, supra; Majczyk v. Oesch, supra; Henery v. Shadle,* 443 Pa. Super. 331, 337, 661 A.2d 439, 442 (1995), *appeal denied,* 542 Pa. 670, 668 A.2d 1133 (1995) (table).

The evidence at trial revealed that plaintiff's injury required no hospital admission, resulted in one day of missed work and that her treatment consisted of four and a half months of physical massage and heat therapy, at the end of which she said she felt "restored," and at the end of three months thereof, she described a pain rate of from zero to one on a scale of 10. Plaintiff's medical records evinced no objective evidence or source for her subjective complaint of pain, and indeed range of motion tests conducted at the beginning of her therapy and a nerve conduction study performed later all elicited results in the "normal" range. It was thus reasonable for the jury to conclude that plaintiff's injury was not significant or serious enough to warrant compensation, and that it constituted no more than a "transient rub of life" which did not rise to the level of an injury for which damages should be awarded. *Van Kirk v. O'Toole,* 857 A.2d 183 (Pa. Super. 2004), *appeal denied,* 583 Pa. 683, 877 A.2d 462 (2005) (table); *Lombardo v. DeLeon,* 828 A.2d 372 (Pa Super. 2003), *appeal denied,* 579 Pa. 704, 857 A.2d 679 (2004) (table); *Majczyk v. Oesch, supra; Boggavarapu v. Ponist, supra.*

Moreover, the glaring discrepancies between plaintiff's statements memorialized in the emergency room report of her treatment and her testimony at trial may have led the jury to decide that she was a veritable Scheherazade who wove magnificent self-serving tales of her travails

which had little, if any, connection with the truth. A jury is free to believe all, part, some or none of the evidence presented. *Majczyk v. Oesch, supra,* 789 A.2d at 725. Simply put, even had her testimony been uncontradicted as plaintiff contends in this appeal, the jury was not required to accept her version of events or the diagnoses set forth in her medical records in whole, in part, or at all. *Van Kirk v. O'Toole, supra; Majczyk v. Oesch, supra; Bezerra v. National R.R. Passenger Corp.,* 760 A.2d 56, 63 (Pa. Super. 2000), *appeal denied,* 567 Pa. 708, 785 A.2d 86 (2001) (table).

## CONCLUSION

The decision to grant or deny a new trial lies within the discretion of the trial court, and its decision will not be reversed absent an abuse thereof or an error of law. *Davis v. Mullen, supra* at 766; *Lombardo v. DeLeon, supra* at 374; *Andrews v. Jackson, supra* at 962. An appellate court is not empowered to merely substitute its opinion concerning the weight of the evidence for that of a trial judge— its focus instead is on whether the trial judge has palpably abused its discretion, as opposed to whether the appellate court can find support in the record for the jury's verdict. *Zeffiro v. Gillen,* 788 A.2d 1009, 1012 (Pa. Super. 2001). The trial court should grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice and not where the evidence is conflicting or where the trial court would have reached a different conclusion on the same facts. *Davis v. Mullen, supra.*

For all of the foregoing reasons, this verdict is not so shocking to one's sense of justice as to warrant over-

turning, and is indeed so well grounded in the record and in the law that the decision to refuse a new trial to the plaintiff should not be reversed.