Neil ATWELL, t/d/b/a Ben–Hal Mining Company, and Janine A. Atwell, Appellees

v.

BECKWITH MACHINERY COMPANY, Appellant

Neil Atwell, t/d/b/a Ben–Hal Mining Company, and Janine A. Atwell, Appellants

v.

Beckwith Machinery Company, Appellee

Superior Court of Pennsylvania.

Argued Dec. 8, 2004.
Filed April 12, 2005.

Kirby L. Boring, Pittsburgh, for Beckwith.

Jack W. Cline, Mercer, for Atwell.

Before: HUDOCK, MUSMANNO and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 Beckwith Machinery Company appeals from the January 29, 2004 judgment of $175,000 entered on the jury's verdict in favor of Neil Atwell t/d/b/a/ Ben–Hal Mining Company and Janine Atwell (Atwell). Atwell filed a cross-appeal from the January 30, 2004 counterclaim judgment of $32,484.94 entered on the jury's verdict in Beckwith's favor.[1]

¶ 2 The underlying cause of action arose out of Atwell's purchase of a D–11N Caterpillar Tractor from Beckwith. Atwell maintains that it contracted to purchase for approximately $775,000, a "Caterpillar Certified Rebuild" tractor from Beckwith,

---

**1.** On May 18, 2004, this Court *sua sponte* consolidated these appeals.

but instead received a "Beckwith Rebuild." Beckwith maintains Atwell agreed to purchase a Beckwith Rebuild. According to Beckwith, a Caterpillar Certified Rebuild is one that has had every part on a specific list of parts rebuilt, whereas a Beckwith Certified Rebuild is one that has had only those parts that are unusable replaced. Atwell also alleged that many of the parts on the machine delivered were defective and so it was often out of service and never worked to capacity.

¶ 3 Atwell filed suit against Beckwith seeking damages for delivery of a defective Beckwith Rebuild in breach of the parties' agreement. Beckwith filed a counterclaim for unpaid repairs to the tractor that extended beyond the warranty. The trial was bifurcated on issues of liability and damages. The jury found Atwell contracted to purchase a Caterpillar Certified Rebuild Tractor but instead received and accepted a Beckwith Rebuild. Based upon these findings, the court ruled that as a matter of law Beckwith materially breached the contract. Beckwith took no exception to this ruling. The court found that pursuant to the Uniform Commercial Code (UCC),[2] Section 2714(b), the measure of damages in this case was the difference at the time and place Atwell accepted the tractor, between the value of the tractor accepted and the value it would have had, had it been as warranted. *See* 13 Pa. C.S.A. § 2714(b).

¶ 4 During the damages phase of the case, the trial court precluded the testimony of Atwell's expert appraiser, but admitted the testimony of Neil Atwell, as it found he was qualified to render an opinion as to the value of the machine he received in contrast to that for which he had contracted. A witness for Beckwith testified on the same issue. The jury

awarded Atwell $175,000 and awarded Beckwith $32,484.94 for repairs not covered by warranty. Beckwith filed a post-trial motion for judgment notwithstanding the verdict (JNOV), or in the alternative, a new trial on damages or as to all issues. The motion ultimately was denied.

¶ 5 The verdict was not molded or setoff; nevertheless, on December 1, 2003, Atwell entered judgment for $142,515.06. On December 22, 2003, the court struck that judgment. It subsequently denied Beckwith's post-trial motions. Atwell then entered judgment on January 29, 2004, and Beckwith entered judgment the following day. Beckwith appealed, and Atwell filed a cross-appeal. We begin our review by addressing each party's respective argument that the other party's appeal should be quashed for lack of jurisdiction.

¶ 6 Beckwith cites *Lenhart v. Cigna Cos.,* 824 A.2d 1193, 1196 (Pa.Super.2003) for the principle that any issue not raised in a post-trial motion is waived for purposes of appeal. Since Atwell did not file a post-trial motion, Beckwith argues that Atwell has not preserved any issues for our review.

¶ 7 Atwell argued one issue in its statement filed pursuant to Pa.R.A.P.1925(b): that the trial court erred in entering the December 22, 2003 Order striking the December 1, 2003 judgment, because judgments entered pursuant to Pa.R.C.P. 227.4, Entry of Judgment upon Praecipe of a Party, (1)(b), are not subject to reconsideration or any other motion to strike, open, or vacate. In this appeal, Atwell again argues that entry of the December 22, 2003 Order violates Pa.R.C.P. 227.4(1)(b), and contends that Beckwith's appeal is untimely since it was not filed within 30 days of the December 1, 2003 Order.[3] Re-

---

2. 13 Pa.C.S.A. §§ 1101 *et seq.*

3. All other issues discussed in Atwell's brief are responsive to the issues raised by Beckwith in its appeal.

lying on the same argument, Atwell also filed with this Court a motion pursuant to Pa.R.A.P. 123, Application for Relief, to quash Beckwith's appeal. On April 23, 2004, we denied the motion without prejudice to renew it at the time of argument.

¶ 8 Atwell contends their appeal should not be quashed for failing to file a post-trial motion because the reason for their cross appeal is simply to quash Beckwith's appeal as untimely and that they never intended to appeal the counter-claim judgment. Atwell essentially claims the basis for its appeal could not have been the subject of a post-trial motion. We agree.

¶ 9 Pa.R.C.P. 227.1, Post Trial Relief, (c)(1), provides that post-trial motions must be filed within ten days after entry of a verdict. Here, the verdict was entered on February 11, 2003. Pa.R.C.P. 227.4(1)(b) provides in pertinent part:

the prothonotary shall, upon praecipe of a party:

(1) enter judgment upon the verdict of a jury..., if

.    .    .    .    .

(b) one or more timely post-trial motions are filed and the court does not enter an order disposing of all motions within one hundred twenty days after the filing of the first motion. A judgment entered pursuant to this subparagraph shall be final as to all parties and all issues and shall not be subject to reconsideration[.]

*Id.* Beckwith filed a motion for post-trial relief on February 18, 2003. A hearing on the motion was scheduled for October 15, 2003, and later rescheduled to November 24, 2003. More than 120 days elapsed and the trial court had not entered an Order disposing of the motion. Pursuant to Rule 227.4(1)(b), on December 1, 2003, Atwell

filed a praecipe to enter judgment on the verdict in which they requested judgment of $142,515.06, "said amount being the molded verdict of the jury." Record No. 27. The prothonotary entered judgment accordingly.

¶ 10 Beckwith filed a motion to strike the judgment and a hearing was scheduled for December 22, 2003. After the hearing, and on that same day, the court entered an Order which struck the December 1, 2003 judgment because it was in the wrong amount. Trial Court Order, 12/22/03, at 1. The Order further explained that the parties had requested a delay in ruling on the post-trial motion while the parties attempted to amicably settle the matter, and also that both parties were aware there was a lengthy delay in the ruling on the motion due to a problem obtaining the trial transcripts.[4] Record No. 28, Trial Court Order, 12/22/03, at 1–2; *see also* Trial Court Opinion, Lutty, J., 4/13/04, at 9.

¶ 11 As previously indicated, the court entered an Order denying Beckwith's post-trial motions on January 23, 2003, and on January 29th judgment was entered upon Atwell's second praecipe, this time in the amount of $175,000. On January 30, 2004, judgment was entered for Beckwith on its praecipe for judgment on the $32,484.94 counterclaim verdict in its favor.

¶ 12 It is clear that in this appeal, Atwell challenges the court's December 22, 2003 Order. A recitation of the above facts makes it apparent Atwell could not possibly have entered a post-trial motion challenging this issue within 10 days of the February 2003 verdict. Accordingly, we reject Beckwith's claim that Atwell waived all issues on appeal for failure to file a post-trial motion.

---

4. The docket indicates that two of the three volumes of trial transcript were filed on May 16, 2003, and the remaining volume was filed on May 19, 2003. All therefore were filed approximately three months after Beckwith filed its post-trial motion.

¶ 13 We turn now to Atwell's claim that Beckwith's appeal should be quashed as untimely filed from the court's December 1, 2003 judgment. It is true that judgments entered pursuant to Pa.R.C.P. 227.4 are not susceptible to motions to reconsider, strike, open, or vacate. *Morningstar v. Hoban,* 819 A.2d 1191, 1194 (Pa.Super.2003), *appeal denied,* 577 Pa. 690, 844 A.2d 553 (2004). Although at first blush it appears the court erred in striking the December 1, 2003 judgment, we need not make a determination on this matter. Even if it was in error, we would not quash Beckwith's appeal as being untimely filed from that judgment because to do so would penalize Beckwith for a breakdown in the court's operation. Accordingly, Atwell's Pa.R.A.P. 123 application for relief is denied.

¶ 14 We now address the merits of Beckwith's remaining issues on appeal.

I. Does the failure of the trial court to charge the jury on any aspect of the applicable law constitute reversible error?

II. Is the trial court's refusal to limit the remedy of the plaintiff, pursuant to terms of the contract between the parties reversible error?

III. Where the Uniform Commercial Code provides a formula for calculation of damages in a particular contractual situation, and the evidence introduced and proven by the plaintiff does not meet the requirements of that calculation, is the verdict entered by the jury and the court's refusal to grant a nonsuit and/or judgment notwithstanding the verdict an error as a matter of law or an abuse of discretion?

IV. Was the trial court's determination that Neil Atwell was a competent witness to testify on damages, based solely upon his ownership of the Caterpillar Tractor, which is the subject of litigation an error of law or abuse of discretion

which allowed the jury to speculate on the issue of damages?

Appellant's brief at 4.

In reviewing a trial court's decision to grant or deny a motion for a new trial, it is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial. Moreover, a new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

. . . we must first determine whether we agree with the trial court that a factual, legal or discretionary mistake was, or was not, made. If we agree with the trial court's determination that there were no prejudicial mistakes at trial, then the decision to deny a new trial must stand. If we discern that a mistake was made at trial, however, we must then determine whether the trial court abused its discretion in ruling on the motion for a new trial. A trial court abuses its discretion by rendering a judgment that is manifestly unreasonable, arbitrary or capricious, or has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will.

*Boucher v. Pa. Hosp.,* 831 A.2d 623, 627 (Pa.Super.2003), *appeal denied,* 577 Pa. 705, 847 A.2d 1276 (2004) (citations and quotations omitted).

¶ 15 As for Beckwith's motion for JNOV, we note that "the entry of a judgment notwithstanding the verdict . . . is a drastic remedy. A court cannot lightly ignore the findings of a duly selected jury." *Education Resources Institute, Inc. v. Cole,* 827 A.2d 493, 497 (Pa.Super.2003), *appeal denied,* 577 Pa. 721, 847

A.2d 1286 (2004), *quoting Neal by Neal v. Lu,* 365 Pa.Super. 464, 530 A.2d 103, 110 (1987).

[T]he proper standard of review for an appellate court when examining the lower court's refusal to grant a judgment n.o.v. is whether, when reading the record in the light most favorable to the verdict winner and granting that party every favorable inference therefrom, there was sufficient competent evidence to sustain the verdict. Questions of credibility and conflicts in the evidence are for the trial court to resolve and the reviewing court should not reweigh the evidence. Absent an abuse of discretion, the trial court's determination will not be disturbed.

*Ferrer v. Trustees of the University of Pennsylvania,* 573 Pa. 310, 317–318, 825 A.2d 591, 595 (2002) (citations omitted).

¶ 16 Beckwith first complains that the trial court erred in failing "to charge on the law of express contract under the [UCC]." Beckwith's brief at 15. Beckwith complains that the court failed to instruct the jury as to express warranty, acceptance, and revocation of acceptance under the UCC. *Id.,* at 15–16.

We review the trial court's jury instructions for an abuse of discretion or legal error controlling the outcome of the case. A jury charge will be found to be adequate unless, when read in its entirety, the charge confused the jury, misled the jury, or contained an omission tantamount to fundamental error. It must appear that the erroneous instruction may have affected the jury's verdict. Consequently, the trial court

has great discretion in forming jury instructions.

*Meyer v. Union R.R. Co.,* 865 A.2d 857, 862 (Pa.Super.2004) (citations omitted).

¶ 17 Pursuant to Pennsylvania's UCC Section 2313, "any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." 13 Pa.C.S.A. 2313(2). In general, all statements of the seller become part of the basis of the bargain "unless good reason is shown to the contrary." Section 2313, Comment 8.

¶ 18 The parties do not dispute that there was a contract between them pursuant to which Beckwith sold Atwell a tractor. The parties only dispute the type of tractor that was subject of the agreement, i.e., either a Caterpillar Rebuild or a Beckwith Rebuild. Beckwith defines a Caterpillar Rebuild as a machine that has had every part on a specific list of parts replaced.[5] Beckwith's brief at 5. Beckwith also explains to this Court that because each of those parts has been replaced, a Caterpillar Rebuild costs more than a Beckwith Rebuild, on which parts are replaced only if they are worn. *Id.,* at 5–6. There can be no doubt that if Beckwith agreed to sell a Caterpillar Rebuild, it was making an express warranty that every part on that specific list of parts would be replaced, and there can be no doubt such a promise would have formed the basis of the bargain. Accordingly, the jury needed only make a determination as to what type of machine Beckwith agreed to sell Atwell. This determination was within the province of the jury, as fact-finder. According-

---

**5.** Beckwith's witness testified that in the Caterpillar Certified Rebuild program, all product upgrades or changes are required to be made whereas Beckwith "takes some liberties in the form of upgrades" and makes those which it deems to be essential, but may not make those it deems to be optional. N.T., at 457–458. Neil Atwell testified that 7,000 parts are replaced on a Caterpillar Rebuild and a new serial number is assigned to a Caterpillar Rebuild; accordingly, "it's just like a brand-new machine." *Id.* at 50; *see also Id.,* at 456–457.

ly, we find it perfectly appropriate that the court, rather than unnecessarily instructing the jury on commercial law, provided the jury with a special interrogatory directing it to make the requisite factual determination.

¶ 19 As for Beckwith's contention that the court erred by failing to instruct the jury as to acceptance and revocation of acceptance under the UCC, it appears this alleged omission caused Beckwith no prejudice. *See Raskin v. Ford Motor Co.,* 837 A.2d 518, 521 (Pa.Super.2003) (stating that a reviewing court will not grant relief on the ground of inadequacy of the charge unless there is a *prejudicial* omission of something basic or fundamental). The jury indicated in its verdict slip that Atwell, "after finding out that the bulldozer delivered was a *Beckwith Rebuild,* agreed to accept a *Beckwith Rebuild* bulldozer[.]" Record No. 19, Jury Verdict Slip, at 1 (emphasis in original). Beckwith does not appear to dispute that Atwell accepted the Beckwith Rebuild. *See* N.T., at 638. Further, the jury found Atwell did not revoke their acceptance within a reasonable time after the bulldozer was delivered and accepted, *id.,* at 2, and Beckwith does not appear to dispute that Atwell did not revoke its acceptance within a reasonable time after delivery and acceptance. *See* N.T., at 638. Accordingly, we find that any alleged omission of these instructions caused Beckwith no prejudice. We have reviewed the jury charge as well as the special interrogatory and find no error of law or abuse of discretion.

¶ 20 Beckwith next argues that pursuant to the parties' agreement, Atwell's exclusive remedy for breach of warranty is the repair or replacement of defective parts. The trial court found that

such a remedy limitation is applicable if the seller can repair or replace defective goods sold, but not where the seller has delivered a non-conforming machine of lesser value and quality than the seller had agreed to sell. Trial Court Opinion, at 3–4. The court further stated that express warranties cannot be disclaimed.

¶ 21 We also note that, at the start of the damages phase, Beckwith raised the issue of the limitation of remedy clause. At that time, the court distinguished between the delivery of defective versus non-conforming goods, and found that at issue in this case was the delivery of non-conforming goods, for which the only cure would have been to have the machine certified as a Caterpillar Rebuild. N.T., at 644–645.

¶ 22 Also in its Opinion, the court explained that it found the remedy limitation was inoperable in any event because it was not sufficiently conspicuous. Trial Court Opinion, at 4. Beckwith contends the court erred in these determinations.

¶ 23 The jury found Atwell knowingly accepted the Beckwith Rebuild.[6] Accordingly, both parties initially agreed that Atwell's damages were properly ascertained using UCC § 2714, Damages of buyer for breach in regard to accepted goods, (b), Measure of Damages for breach of warranty, which provides:

The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

6. We note that "[k]nowing acceptance of non-conforming goods merely prevents a buyer's subsequent rejection of the goods; it does not impair any other remedy provided by the code." *Beaver Valley Alloy Foundry, Co. v. Therma–Fab, Inc.,* 814 A.2d 217, 220 (Pa.Super.2002); *see also* 13 Pa.C.S.A. § 2607(b).

*Id.; See also* N.T., 638–642. Beckwith then raised the issue of contractual limitation of remedy, pursuant to the parties' agreement and UCC Section 2719. *See* N.T., 642–647. There is no dispute that the parties' agreement includes an exclusive remedy provision for breach of warranty, limiting the remedy to repair or replacement of defective parts. *See* Record No. 3, First Amended Complaint, Plaintiff Exhibit A. UCC Section 2719, Contractual modification or limitation of remedy, (a) General rule, (1), provides "[t]he agreement ... may limit or alter the measure of damages recoverable under this division, as by limiting the remedies of the buyer ... to repair and replacement of nonconforming goods or parts." 13 Pa. C.S.A. § 2719(a)(1). This section is subject to Section 2719(b), Exclusive remedy failing in purpose, which provides "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title." *Id.,* § 2719(b). "Where an apparently reasonable clause because of circumstances fails in its purpose *or operates to deprive either party of the substantial value of the bargain,* it must give way to the general remedy provisions of this Article." Section 2719, Comment 1 (emphasis supplied).

¶ 24 We find that under the circumstances, the exclusive remedy clause operates to deprive Atwell of the substantial value of its bargain since repair or replacement of only those parts that are defective essentially provides Atwell with a Beckwith Rebuild and not the Caterpillar Rebuild the jury found Atwell agreed to purchase. It is therefore proper to resort to the UCC remedy of awarding Atwell the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted. *See* 13 Pa.C.S.A. § 2714(b). Accordingly, we affirm the trial court's determination that this is the proper measure of damages in this case.

¶ 25 Next, Beckwith essentially argues the evidence was insufficient to prove the damages under the UCC. In disposing of this argument, we also address Beckwith's argument that the court erred in allowing Neil Atwell to testify on the issue of damages, as we find that these two issues are interrelated.

¶ 26 We already have concluded that Atwell is entitled to the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted. Accordingly, Atwell was required to proffer evidence from which the jury could determine the difference between the value of the Beckwith Rebuild as delivered, and the value of a Certified Caterpillar Rebuild, as of January 1997.

¶ 27 We note that while purchase price is *prima facie* evidence of the value of the goods had they been as warranted, Atwell was required to present evidence of the actual value at the time of delivery of the tractor as delivered. *See Price v. Chevrolet Motor Div. of GMC,* 765 A.2d 800, 811 (Pa.Super.2000).

¶ 28 Atwell offered an expert report which calculated the current replacement cost of the tractor delivered to Atwell. The court granted Beckwith's objection and excluded the witness's testimony. The court allowed Neil Atwell to testify on the issue of damages because it found that as the owner of the property, i.e., the Beckwith Rebuild, he was qualified to testify as to the value of that property. N.T., at 649–666. As an offer of proof, Atwell stated:

> Mr. Atwell will testify that he took delivery of the D–11 dozer that he purchased from Beckwith in January 199[7], that he is very familiar with dozers and,

in particular, CAT dozers with regard to their price, new and used.

He has purchased in his 11 or 12 years in this business a number of bull-dozers, two D10–L's, two D10–N's, two D9–H's.

He can list 10 or 12 dozers that he's purchased that are comparable to the dozer that he bought from Beckwith as far as what they do, what type of work they do and how much he'd be willing to pay for them.

He's also purchased a number of other CAT machines, totaling somewhere near 50 machines that he's purchased in his lifetime, over 50 machines.

He goes to the auctions in Florida. They have heavy equipment auctions. He looks at the equipment being auctioned off. He listens to the prices they are sold for and he is very attune to the equipment, value of equipment, new and used.

.     .     .     .     .

[H]e inspected very closely the dozer that he received from Beckwith.

He familiarized himself with the machine. He ran the machine. He used the machine.

Our position is that as the owner of this machine and as a knowledgeable person in dealing with equipment and heavy equipment of this nature and being attuned to the prices of this equipment, that he has more than enough knowledge to testify as to its value.

N.T., at 656–657; *see also*, N.T., 676–681. Atwell also relied upon *Sweitzer v. Whitehead*, 404 Pa. 506, 173 A.2d 116 (1961) in which our Supreme Court found that Sweitzer, as the owner of the foundry equipment at issue, and having 21 years experience buying and selling foundry equipment, was competent to testify as to its value. The Court likewise relied upon *Sweitzer* in allowing Atwell to testify. Trial Court Opinion, at 4.

¶ 29 We agree that Neil Atwell was competent to testify on this issue. We find further support for this conclusion in *J.W.S. Delavau v. E. Am. Transp. & Warehousing*, 810 A.2d 672 (Pa.Super.2002), *appeal denied*, 573 Pa. 704, 827 A.2d 430 (2003). In *Delavau*, we found the owner and bailee of calcium carbonate who had been involved in the manufacture and sale of calcium product for many years was competent to testify as to the value of his damaged goods. In *Delavau*, we relied upon *Silver v. Television City, Inc.*, 207 Pa.Super. 150, 215 A.2d 335 (1965) for the principle that "[w]here a party is particularly familiar with its property, it is competent to approximate the value of the property." *Id.*, at, 686. In *Silver*, this Court stated:

> Generally, an owner of property, real or personal, is competent to testify as to its value. It is only when it plainly appears that the owner has no knowledge of the value he expresses an opinion about that the presumption arising from ownership is overcome and his opinion is inadmissible.

*Id.*, at 339 (citations omitted). Here, we find that Atwell, as the property owner and one particularly familiar with this property, is well-situated to render his opinion as to the property's value. The weight to attach to his testimony is within the province of the jury.

¶ 30 Beckwith alleges the court erred in allowing Atwell to testify because he was not qualified as an expert, and because in the commercial context the proposition that the owner of property is qualified to testify as to the value of his property does not apply "as fully or automatically as in the noncommercial context." Beckwith's brief at 36. In *Delavau* and *Silver* the property owners were permitted to testify as to the value of their property without qualification as an expert. Further, we

find no basis upon which to conclude this commercial/noncommercial distinction is valid. We note that recent law of our sister states, while not binding, supports our rejection of this distinction. For example, in *Mayberry v. Volkswagen of Am., Inc.*, 2005 Wisc. LEXIS 12, the Supreme Court of Wisconsin was faced with a UCC breach of warranty case brought by the purchaser of an automobile. The purchaser of the car was permitted to testify as to its value at the time and place of acceptance. The Court reiterated that Wisconsin case law is clear that an owner of property may testify as to its value and that such testimony may properly support a jury verdict for damages, even though the opinion is not corroborated or based on independent factual data. The Court noted that while such testimony was sufficient to survive summary judgment, it may not be persuasive to the jury. *Id.* Similarly, in *Monroe v. Hyundai Motor Am., Inc.*, 270 Ga.App. 477, 606 S.E.2d 894 (2004), the Georgia Court of Appeals was faced with a UCC breach of warranty case brought by the purchaser of an automobile. The Court found that the automobile purchaser's testimony as to value at delivery was insufficient; it reiterated, however, that generally an owner of property can be qualified to state an opinion as to value, but in order to have probative value such opinion evidence must be based upon a foundation that the witness has some knowledge, experience or familiarity with the value of the property or similar property and he must give reasons for the value assessed and also must have had an opportunity for forming a correct opinion. We conclude the court did not err in allowing Neil Atwell to testify on the issue of damages.

¶ 31 Neil Atwell testified that the value of the tractor as delivered was $250,000. N.T., at 681. The purchase price, exclusive of the trade-in and financing charges, was approximately $700,000.[7] N.T., at 711–712. We find this is sufficient evidence as to the value of the tractor as warranted, i.e. of a Caterpillar Rebuild, in January 1997. Atwell's testimony therefore indicates a $450,000 difference in value. *Id.*, at 683. Jay Capristo, a regional manager for Beckwith testified that as of January 1997, the difference in sales price between a Certified Caterpillar Rebuild and a Beckwith Rebuild was between $35,000 and $50,000. *Id.*, at 714–715, 720. We note that "[i]t is only required that the proof afford a reasonable basis from which the fact-finder can calculate the plaintiff's loss." *Delavau*, supra at 686. We find this testimony was sufficient for the jury to determine the difference in value between the Beckwith Rebuild delivered and a Caterpillar Rebuild at the time and place of acceptance.

¶ 32 The testimony above presented a discrepancy between Atwell's testimony that the difference in value between the Beckwith Rebuild as delivered and a Caterpillar Rebuild as warranted was $450,000, and Beckwith witnesses' testimony that the difference between the two was between $35,000 and $50,000. It is axiomatic that it is within the province of the jury to decide the weight to afford a witness's testimony. The jury returned a verdict of $175,000 for Atwell on this issue, which appears to be a compromise be-

---

7. Beckwith repeatedly insists that the $700,000 purchase price was for a Beckwith Rebuild, since it had always intended to sell Atwell a Beckwith Rebuild. Beckwith's brief, at 30. The jury found that Beckwith agreed to sell Atwell a Caterpillar Rebuild. Accordingly, the $700,000 purchase price must have been for the Caterpillar Rebuild. As stated above, pursuant to *See Price v. Chevrolet Motor Div. of GMC*, 765 A.2d 800, 811 (Pa.Super.2000), the $700,000 purchase price is prima facie evidence of the value of the tractor as warranted.

tween the two opinions presented. We find the jury had a reasonable basis for this calculation.

¶ 33 Judgments affirmed.