J-A28041-15

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JESSICA M. OAKES, | |
| Appellant | No. 2849 EDA 2014 |

Appeal from the Judgment of Sentence June 5, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006574-2013

BEFORE:  GANTMAN, P.J., PANELLA, and SHOGAN, JJ.

MEMORANDUM BY SHOGAN, J.:               **FILED DECEMBER 14, 2015**

Appellant, Jessica M. Oakes, appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County on June 5, 2014.  We affirm.

Following a physical altercation with another woman on June 13, 2012, Appellant was charged with, *inter alia*, aggravated assault and possession of an instrument of crime.  A jury trial was held on March 27-28, 2014 where Appellant was found guilty of the above-referenced charges.  A presentence investigation report was ordered.  Appellant was sentenced on June 5, 2014, to two and one-half to five years of incarceration at a state correctional institution.  Additionally, Appellant was ordered to pay court costs and to complete a graduate equivalency degree ("GED").

Appellant filed a post-sentence motion on June 5, 2014, which was denied by operation of law on October 6, 2014. On October 8, 2014, Appellant filed a timely notice of appeal. Appellant was directed to file a Pa.R.A.P. 1925(b) statement. Appellant complied and the trial court filed a Pa.R.A.P. 1925(a) opinion.

Appellant presents the following issues for our review,[1] which we reproduce here verbatim:

> 1.  Whether a new trial must be ordered because the court - contrary to the well-established law of Pennsylvania - abused its discretion by precluding Ms. Oakes from offering evidence of the alleged victim's tumultuous character (specifically evidence of an additional fight at a Chinese restaurant and a social media profile wherein the complaining witness described herself as "sweet as candy but hard as ice") during trial for the purpose of proving that the victim was the first aggressor and for the purpose of impeaching the complaining witness, all of which violated Ms. Oakes' rights to confrontation and to present a complete defense.
>
> 2.  Whether a new trial must be ordered because the court abused its discretion when it denied counsel's reasonable request for a very brief continuance because his character witness' child had a medical emergency and unexpectedly became unavailable to offer character evidence.
>
> 3.  Whether a new trial must be ordered because the Court abused its discretion by denying counsel's request for a jury instruction on the law of inconsistent statements (*i.e.*, that the jury may consider an inconsistent statement for the truth of the matter asserted) where the inconsistent statement at issue concerned a material element of the justification defense.

_____

[1]  We note that the issues raised in Appellant's brief are identical to the issues raised in her Pa.R.A.P. 1925(b) statement.

4.   Whether the verdict was against the weight of the evidence because there was uncontradicted testimony that the complaining witness pulled Jessica Oakes from her bike and began attacking her, the foreman of the jury stated that the jury did not believe that Ms. Oakes meant to harm the victim, and the Commonwealth failed to sustain its burden to disprove self-defense beyond a reasonable doubt.

5.   Whether the evidence was insufficient to disprove self-defense beyond a reasonable doubt because there was uncontradicted testimony that the complaining witness pulled Jessica Oakes from her bike and began attacking her, the foreman of the jury stated that the jury did not believe that Ms. Oakes meant to harm the victim, and in any event the Commonwealth's witnesses were so incredible and contradictory that no probability of fact can be reasonably drawn from their testimony.

Appellant's Brief at 11-12.

Upon review of the issues raised, the credibility determinations made by the trial court, the certified record, the briefs of the parties, and the applicable legal authority, we conclude that the trial court's thorough and well-crafted opinion entered on March 12, 2015, comprehensively and correctly disposes of Appellant's issues.[2]  Accordingly, we affirm Appellant's judgment of sentence, and we do so based on the trial court's opinion.  The parties are directed to attach a copy of that opinion in the event of further proceedings in this matter.

---

[2]  We note some discrepancy in the trial court's opinion regarding the date of the incident at issue in this case.  Several times in its opinion the trial court references the date of the incident as June 5, 2012.  As the testimony at trial reveals, however, the altercation took place on June 13, 2012.  N.T., 3/27/14, at 29, 69, 120.

- 3 -

Judgment of sentence affirmed.

Judge Panella joins the memorandum.

P.J. Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/2015

IN THE COURT OF COMMON PLEAS OF PHILADELPHI
FIRST JUDICIAL DISTRICT OF PENNSYLVANI
CRIMINAL TRIAL DIVISION



7268868731

COMMONWEALTH OF PENNSYLVANIA  :  CP-51-CR-0006574-2013

v.

**FILED**

MAR 1 2 2015

JESSICA M. OAKES   Criminal Appeals Unit  :
First Judicial District of PA

: SUPERIOR COURT
: NO. 2849 EDA 2014

OPINION

THOMAS STREET, J.                                  March 12, 2015

## I. OVERVIEW AND PROCEDURAL HISTORY

The Defendant, Jessica M. Oakes, appeals this Court's Judgment of Sentence. The Defendant was arrested and charged with *inter alia* Aggravated Assault[1] and Possession of an Instrument of Crime[2] for a June 5, 2012 incident that occurred at or near 22nd and McKean Street, Philadelphia, Pennsylvania. A jury trial was held before this Court on March 27-28, 2014. At the conclusion of trial, the Defendant was found guilty of the above charges. A presentence investigation was ordered. On June 5, 2014, the Defendant was sentenced to two and a half (2 ½) to five (5) years of incarceration at a State Correctional Institution (SCI). Additionally, the Defendant was ordered to pay impending court costs and to complete a Graduate Equivalency Degree (GED).

The Defendant filed a post-sentence motion on June 5, 2014. On October 6, 2014, the motion was denied. On October 8, 2014, the Defendant filed a timely Notice of Appeal. On October 22, 2014, this Court ordered the Defendant to file a Concise Statement of Errors

---

[1] 18 P.A. C.S.A. § 2702
[2] 18 P.A. C.S.A § 907

1

Complained of on Appeal pursuant to Pa. R.A.P. 1925 (b) within 21 days. On November 7, 2014, the Defendant filed the Concise Statement of Errors.

## II.     FACTUAL HISTORY

Ms. Vitia Wilson, the Complainant, testified that on the morning of June 5, 2012 she took her two children to school and went to meet her boyfriend, Mr. Richard Jackson, at a doughnut shop located on 22nd and Snyder Street, Philadelphia, Pennsylvania. (N.T. 3/27/14 pp. 29-30).[3] While en route to the shop, she encountered the Defendant riding her bike near the point of rendezvous. (N.T. 3/27/14 p. 30). A confrontation ensued and the two began fighting. (N.T. 3/27/14 p. 31). The Complainant testified that during the scuffle the Defendant took out a pocket style knife and stabbed her directly above the ribs. (N.T. 3/27/14 pp. 36-38). When the Complainant discovered that she was bleeding, she sat down outside a nearby store and screamed. "You stabbed me." "You stabbed me." "We was just out here fighting." "Why did you have to stab me?" (N.T. 3/27/14 p. 39). Police and emergency personnel arrived. *Id.* The Complainant was transported to the hospital where she underwent treatment for her injuries. *Id.* The Complainant was hospitalized for a period of nineteen (19) days. (N.T. 3/27/14 p. 40).

The Complainant first met the Defendant in 2009 at a time when her boyfriend, Mr. Jackson, was engaged in an argument with his sister outside of the sister's house. (N.T. 3/27/14 p. 35). The Defendant injected herself into the argument. *Id.* This upset the Complainant and a quarrel between her, the Defendant, and the Defendant's girlfriend erupted. *Id.* Although no physical violence took place, the incident sparked a three year long feud in which the pair often exchanged words of hostility upon encountering one another. *Id.*

On cross examination, Defense Counsel referred to the May 2012 preliminary hearing in which the Complainant admitted confronting the Defendant just prior to the fight. (N.T. 3/27/14

---

[3] All references to the record refer to the transcript of the jury trial recorded on March 27 and March 28, 2014

2

p. 49). The Complainant vehemently denied this account and insisted that she never initiated the confrontation. *Id.* She stated that she was merely defending herself as she was unable to escape from the Defendant. (N.T. 3/27/14 pp. 53-55).

Mr. Richard Jackson, the Complainant's boyfriend, testified that on the morning of June 13, 2012, he was in the doughnut shop on 22nd and Snyder Street, Philadelphia, Pennsylvania. (N.T. 3/27/14 p. 66). Instead of waiting for the Complainant inside the shop as originally planned, he set out on foot in her anticipated direction. (N.T. 3/27/14 p. 69). As he came within half of a block of 22nd and Mckean Street, he saw the Defendant and the Complainant engaged in a face-to-face confrontation. *Id.* The Complainant had the Defendant on the ground. *Id.* Mr. Jackson stated that he then saw the Defendant pull out a knife and strike the Complainant twice. *Id.* The first strike only grazed the victim but the second punctured her lung. (N.T. 3/27/14 pp. 69-70). The Defendant asked him "You want to defend for this bitch?" (N.T. 3/27/14 p. 71). The Defendant then kicked the Complainant in the face and fled up 22nd Street. *Id.* Mr. Jackson stated that he pursued the Defendant but his efforts ended when police arrived on scene shortly thereafter. *Id.*

Mr. Jackson further testified that he had known the Defendant since 2006 or 2007. (N.T. 3/27/14 p. 66). The Complainant and the Defendant first became acquainted in 2009 during the incident in which Mr. Jackson and Mr. Jackson's sister were engaged in a verbal altercation. (N.T. 3/27/14 p. 67). The Defendant, who was not a party to the dispute, "added her two cents." *Id.* This fueled an argument that culminated into both police intervention and a three year long hostile relationship between the Defendant and the Complainant. (N.T. 3/27/14 pp. 66-67).

On cross examination, Mr. Jackson admitted that he did not see who initiated the June 13, 2012 incident. (N.T. 3/27/14 p. 75). While he was in the doughnut shop that morning, he and

3

the Complainant spoke by phone about meeting at that location. (N.T. 3/27/14 p. 76). Mr. Jackson reiterated that instead of waiting in the shop, he walked down 22nd Street in the direction of the Complainant. *Id.* Upon arriving at McKean Street, he witnessed the Complainant and the Defendant engaged in the physical altercation. (N.T. 3/27/14 p. 75). Mr. Jackson reiterated that the Defendant took out a knife, grazed the Complainant with one swipe and punctured her lung with the second. (N.T. 3/27/14 p. 78). A man walked up and said, "[d]on't swing the knife, [d]on't swing the knife." *Id.* This is when the Defendant stated, "[y]ou want to defend for this bitch" and ran away. *Id.*

The Defendant, Jessica M. Oakes, testified that she moved to Philadelphia from Jacksonville, Florida at the age of thirteen (13). (N.T. 3/28/14 p. 17). She met Mr. Richard Jackson, the Complainant's boyfriend, one year later when she moved to South Philadelphia. (N.T. 3/28/14 p. 18). Mr. Jackson, in his late twenties (20's) at the time, initially expressed romantic interest in her. *Id.* No intimate relationship materialized after the Defendant's mother approached him and the Defendant herself informed him that she was "into females." *Id.*

Nevertheless, the Defendant continued to encounter Mr. Jackson. (N.T. 3/28/14 p. 19). In 2009, she went to his residence to purchase marijuana. (N.T. 3/28/14 p. 20). The Complainant was present and inquired why the Defendant was speaking with "her man." *Id.* The Defendant informed her that she was not talking to Mr. Jackson and that, as she was in fact a lesbian, she was not romantically interested in him. *Id.* The Complainant did not believe the Defendant and an argument began. *Id.* Thus, the Defendant and the Complainant's relationship worsened as nearly every encounter between the two resulted in an angry verbal exchange. (N.T. 3/28/14 p. 21). The Complainant harassed and verbally assaulted her with anti-gay slurs. (N.T.

4

3/28/14 p. 22). Mr. Jackson also told the Defendant to "stop being gay" and to come over to his side so he could engage in sexual relations with her. *Id.*

The Defendant testified that on June 5, 2012, she encountered Mr. Jackson on 22nd Street as she rode her bike to a nearby store. (N.T. 3/28/14 pp. 23-25). Mr. Jackson, who was walking on foot, smiled at her. (N.T. 3/28/14 p. 25). The Defendant did not smile back but did stop her bike to "assess the situation." (N.T. 3/28/14 pp. 25-26). When the Defendant stopped the Complainant grabbed her by the hair and pulled her off the bike. (N.T. 3/28/14 p. 26). The bike fell to the side and the two began fighting. (N.T. 3/28/14 pp. 26-27). The Defendant stated that Mr. Jackson intervened and punched her three (3) or four (4) times in the head. *Id.* The Defendant stated that she took out her knife and swung it because she was being attacked by Mr. Jackson and the Complainant.. (N.T. 3/28/14 pp. 30-31). The knife hit the Complainant, thereby causing her to bleed profusely. (N.T. 3/28/14 p. 31). Mr. Jackson appeared to notice that the Complainant was bleeding, backed up and called the police. (N.T. 3/28/14 p. 33). Two people then came up to stop the fight. (N.T. 3/28/14 p. 34). The Defendant stated that she ran in the direction of her house because she was scared from having hurt the victim. (N.T. 3/28/14 p. 34).

On cross examination, the Defendant reaffirmed that Mr. Jackson had tried to date her when she was just fourteen (14) years old. (N.T. 3/28/14 p. 40). She restated that she purchased marijuana from Mr. Jackson and that her initial altercation with the Complainant took place during a marijuana purchase at Mr. Jackson's residence. (N.T. 3/27/14 p. 41).

Dr. Richard Cohn, a qualified expert in forensic toxicology and pharmacology, testified that the Complainant's urine drug screen administered during her hospital stay was positive for benzodiazepines and the marijuana metabolite tetrahydrocannabinol (THC). (N.T. 3/27/14 pp. 101-104). However, in the absence of additional testing, Dr. Cohn could not be certain when the

5

THC metabolites had entered the Complainant's body or whether the presence of THC meant the Complainant had been in anyway impaired during the incident. (N.T. 3/27/14 p. 101).

On cross examination, Dr. Cohn clarified that drug screening tests only indicate the presence of marijuana metabolites. (N.T. 3/27/14 p. 106). They do not identify the substance (i.e. marijuana). (N.T. 3/27/14 pp. 105-108). Additionally, such screening tests do not reveal the quantity of metabolite present nor whether the individual being tested is a marijuana user. (N.T. 3/27/14 p. 113). Dr. Cohn further stated that in cases of emergency medical intervention such as the Complainant's it may have been appropriate for benzodiazepine to be administered during treatment. (N.T. 3/27/14 p. 114). For this reason, the significance of the screening test was indeterminable. *Id.*

Philadelphia Police Officer Michael Policella testified that on June 13, 2012, he responded to a radio call about a female being stabbed at 22nd and McKean Street. (N.T. 3/27/14 p. 121). Upon his arrival, Officer Policella noted that the Complainant was holding her left side and that both her shirt and hands were soaked in blood. (N.T. 3/27/14 p. 123). Nevertheless, Officer Policella was able to converse with both the Complainant and Mr. Richard Jackson who stated that he witnessed the entire incident. (N.T. 3/27/14 p. 124).

On cross examination, Officer Policella stated that he did not personally witness the incident. (N.T. 3/27/14 p. 130). In addition, he never saw the Defendant and only received information about the Defendant's whereabouts through his conversations with the Complainant and Mr. Jackson. (N.T. 3/27/14 pp. 131-132).

Philadelphia Detective Arthur Maccari testified that on the morning of March 13, 2014 he arrived at 22nd and Mckean Street after the crime scene had been taped off. (N.T. 3/27/14 p. 145). By the time he arrived, the Complainant had been transported to University of

Pennsylvania Hospital. (N.T. 3/27/14 p. 147). However, by interviewing the Complainant and the eyewitness (Mr. Richard Jackson) Detective Maccari was able to obtain the Defendant's name and physical description. *Id.* A search warrant was issued for the Defendant's residence at 2219 McKean Street and affected on March 16, 2014 but yielded no contact. (N.T. 3/27/14 pp. 148, 152). Police ran the Defendant's identifying information through Lexis Nexis (a computer software program) and found an address in Jacksonville, Florida. (N.T. 3/27/14 p. 152). Detective Maccari contacted law enforcement in Jacksonville who then went to the address but yielded no contact. (N.T. 3/27/14 p. 156). Over the next year, Detective Maccari periodically visited the Defendant's Philadelphia residence but made no contact. (N.T. 3/27/14 p. 157).

Detective Maccari testified on cross examination that he did not know how Lexis Nexis worked. (N.T. 3/27/14 p. 162). Additionally, he stated that he did not know how far in distance the Defendant's 2219 Mckean Street residence was from where the Defendant was ultimately arrested. (N.T. 3/27/14 p. 166).

Philadelphia Police Officer Michael Navedo testified that on the evening of May 5, 2013, he encountered the Defendant near 5500 Chester Avenue, Philadelphia, Pennsylvania. (N.T. 3/27/14 p. 176). He believed that the Defendant was in violation of city curfew laws because of her youthful appearance. *Id.* Officer Navedo stopped her, requested her name and address, and ran her information through the National Crime Information (NCIC/PCIC) database. *Id.* The search revealed that a warrant had been issued on her for aggravated assault. (N.T. 3/27/14 p. 177). Based on this information, Officer Navedo arrested the Defendant and placed her into custody. (N.T. 3/27/14 p. 178).

On cross examination, Officer Navedo restated that he approached the Defendant because he believed she was under the age of sixteen (16). (N.T. 3/27/14 p. 184). He requested

7

her name and date of birth. (N.T. 3/27/14 pp. 184 -187). He then ran this information through the NCIC/PCIC database and learned that the Defendant had a warrant for her arrest. *Id.*

The Commonwealth stipulated with Defense Counsel that the Complainant was admitted to University of Pennsylvania Hospital on June 13, 2012. (N.T. 3/27/14 p. 95). The parties also agreed that the Complainant suffered a two (2) inch laceration to the left chest, that a urine drug screen testified positive for benzodiazepines and THC, and that the Complainant had an emergency surgery procedure called a left anterolateral thoracotomy. *Id.* Finally, it was also stipulated that the Complainant remained hospitalized under the care and supervision of Dr. Daniel Grabo and Steven Allen for nineteen (19) days until she was discharged on July 2, 2012. (N.T. 3/27/14 p. 96).

## III.    ISSUES

In the Pa. R.A.P. 1925 (b) Statement of Matters Complained of on Appeal, the Defendant identifies the following issues:

1. Whether a new trial must be ordered because the court - contrary to the well-established law of Pennsylvania-abused its discretion by precluding Ms. Oakes from offering evidence of the alleged victim's tumultuous character (specifically evidence of an additional fight at a Chinese restaurant and a social media profile wherein the complaining witness described herself as "sweet as candy but hard as ice") during trial for the purpose of proving that the victim was the first aggressor and for the purpose of impeaching the complaining witness, all of which violated Ms. Oakes' rights to confrontation and to present a complete defense.

2. Whether a new trial must be ordered because the court abused its discretion when it denied counsel's reasonable request for a very brief continuance because his character witness' child had a medical emergency and unexpectedly became unavailable to offer character evidence.

3. Whether a new trial must be ordered because the Court abused its discretion by denying counsel's request for a jury instruction on the law of inconsistent statements (*i.e.,* that the jury may consider

8

an inconsistent statement for the truth of the matter asserted) where the inconsistent statement at issue concerned a material element of the justification defense.

4. Whether the verdict was against the weight of the evidence because there was uncontradicted testimony that the complaining witness pulled Jessica Oakes from her bike and began attacking her, the foreman of the jury stated that the jury did not believe that Ms. Oakes meant to harm the victim, and the Commonwealth failed to sustain its burden to disprove self-defense beyond a reasonable doubt.

5. Whether the evidence was insufficient to disprove self-defense beyond a reasonable doubt because there was uncontradicted testimony that the complaining witness pulled Jessica Oakes from her bike and began attacking her, the foreman of the jury stated that the jury did not believe that Ms. Oakes meant to harm the victim, and in any event the Commonwealth's witnesses were so incredible and contradictory that no probability of fact can be reasonably drawn from their testimony.

## IV.     STANDARD OF REVIEW

A challenge to the sufficiency of evidence is a question of law. *Commonwealth v. Heater*, 2006 PA Super 86, 11, 899 A.2d 1126, 1131 (2006) (*citing Commonwealth v. Widmer*, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000). The role of an appellate court in reviewing the weight of the evidence is very limited. *Commonwealth v. Holmes*, 444 Pa. Super. 257, 264, 663 A.2d 771, 774 (1995). When reviewing a sufficiency of the evidence claim, a court must review the evidence and all reasonable inferences in the light most favorable to the Commonwealth as the verdict winner, and must determine if the evidence, thus viewed, is sufficient to enable the fact-finder to find every element of the offense beyond a reasonable doubt. *Commonwealth v. Valette*, 531 Pa. 384, 388, 613 A.2d 548, 549 (1992); *Commonwealth v. Marks*, 704 A.2d 1095 (Pa. Super. 1997).

A reviewing court may not weigh the evidence or substitute its own judgment for that of the fact-finder, who is free to believe all, part, or none of the evidence. *Commonwealth v.*

*Adams*, 2005 Pa. Super. 296, 882 A.2d. 496, 498-99 (Pa. Super. 2005). An appellate court may reverse a lower court's verdict only in the instance that it is so contrary to the evidence as to shock one's sense of justice. *See Commonwealth v. Hunzer*, 868 A.2d 498, 506-507 (Pa.Super.2005), appeal denied, 584 Pa. 673, 880 A.2d 1237 (2005). Whether a new trial should be granted on the ground that a conviction was against the weight of the evidence is addressed to the sound discretion of the trial judge, and that decision will not be reversed on appeal absent a showing of abuse of discretion. *Commonwealth v. Petteway*, 847 A.2d 713, 716 (Pa. Super. 2004) (*citing Commonwealth v. Davis*, 799 A.2d 860, 865 (Pa. Super. 2002)).

Additionally, the Commonwealth may satisfy its burden of proof entirely by circumstantial evidence. *See Commonwealth v. Adams*, 2005 Pa. Super 296, 882 A.2d. 496, 499 (Pa. Super 2005); *see also Commonwealth v. Murphy*, 2002 PA Super 84, 795 A.2d 1025, 1038-39 (Pa. Super. 2002) ("The fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence."). "If the record contains support for the verdict, it may not be disturbed." *Adams*, 882 A.2d. at 499.

## V.    DISCUSSION

The Defendant first contends that the trial court erred when it refused to admit certain specific instances of the Complainant's character. This Court disagrees.

Whether relevant evidence is admitted is a matter fully vested within the trial court's discretion. *Commonwealth v. Claypool*, 508 Pa. 198, 495 A.2d 196 (1985). The trial court must, in making such determinations, weigh the probative value of the proffered evidence against its prejudicial impact. *Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491 (1988). Ultimately, this means a trial court's evidentiary ruling is only reversible upon a showing of discretionary abuse.

10

*Commonwealth v. Bartlett,* 446 Pa. 392, 400, 288 A.2d 796, 799-800 (1972). This is more than a judgment error. *Commonwealth v. Herb,* 852 A.2d 356, 363 (Pa. Super. 2004). The decision to include or exclude the evidence must have been either manifestly unreasonable, the result of partiality, bias, or the result of ill-will. *Id.* Thus, a discretionary ruling cannot be overturned simply because the reviewing court disagrees with the trial court's conclusion. *In re Semeraro,* 511 Pa. 584, 587, 515 A.2d 880, 882 (1986).

Here, the Defendant referenced two specific instances of the Complainant's character: a video of a fight between the victim and an unidentified female outside of a Chinese store, and a social media site posting in which the victim allegedly described herself as "sweet as candy but hard as ice." (N.T. 3/27/14 pp. 4-10). The Defendant asserts that this evidence was admissible under the Pennsylvania Rules of Evidence to show the victim's violent propensities. Because the trial court excluded this evidence, the Defendant raises a claim for discretionary error, the remedy for which is reversal and a new trial.

The Defendant's argument fails for two reasons. First, this Court never substantively opposed the fight video's admissibility. The Court's primary objection concerned Defense Counsel's failure to produce the physical video at trial. Due diligence requires that Defense Counsel have the video readily available to show the Court and the Commonwealth. *See* Pa. R. Crim. P. 573. Thus, in an exercise of discretion, this Court refused the evidence because Defense Counsel failed to do his due diligence.

This Court also objected to the manner in which Defense Counsel sought to introduce the character evidence. During pre-trial proceedings and during the first day of trial, Defense Counsel suggested that he would either cross examine the victim about the fight and the contents of the social media posting or call the victim to testify to them. Such actions are in violation of

11

the Pennsylvania Rules of Evidence. The Pennsylvania Rules of Evidence require defendants in criminal cases to proffer their own evidence of a victim's tumultuous character. *See* Pa. R. Evid. 404 (a)(2)(B); *Commonwealth v. Dillon*, 528 Pa. 417, 598 A.2d 963 (1991). Under the rules, the Defendant is also barred from inquiring into specific instances of conduct without first satisfying Pa. R. Evid. 404(a)(2)(B). *See* Pa. R. Evid. 405. Accordingly, this Court correctly concluded that, in the absence of a proffer of evidence, the Defendant could only pursue matters that the witness opened the door to on cross examination.

Next, the Defendant objects to the Court's denial of a continuance request that was made when the Defendant's character witness became unavailable. (N.T. 3/28/14 p. 11). The Defendant maintains the request was reasonable and that the Court committed reversible error when it barred the witness from testifying at a later date. This Court disagrees.

A decision to grant a continuance based on the absence of a material witness lies within the sound discretion of the trial court. *Commonwealth v. Smith*, 442 Pa. 265, 270 (1975). In this respect, a denied continuance request is only reversible upon a showing of discretionary abuse. *Commonwealth v. Boxley*, 596 Pa. 620, 948 A.2d 742, 746 (2008) (*citing Commonwealth v. Randolph*, 582 Pa. 576, 873 A.2d 1277, 1281 (2005)). In determining how to utilize its discretion, the trial court conducts a factor analysis. *See Smith*, 442 Pa. 265 at 270. Relevant factors include: 1) whether the absent witness is necessary to strengthen the appellant's case; 2) the essentiality of the witness to appellant's defense; 3) the diligence exercised to procure the witness's presence at trial; 4) the facts to which the witness could testify; 5) and the likelihood that the witness could be produced at the next term of court. *Id.*

Here, the Defendant requested a continuance because a character witness, Valitama Murray, was unavailable to testify. (N.T. 3/28/14 p. 11). Although Ms. Murray was present

12

during the first day of trial, she was absent the day of her scheduled testimony due to an alleged hospital emergency involving one of her children. (N.T. 3/28/14 p. 15). The Court denied Defense Counsel's request because the continuance would delay trial as it was the end of the week and the character witness had proper notice of the trial date. *Id.* A continuance, based on Ms. Murray's absence, could not be accommodated. *Id.* Moreover, Defense Counsel made no mention of how essential Ms. Murray's testimony was to the Defense. *Smith*, 442 Pa. 265 at 270. In fact, Defense Counsel never articulated any reason, other than Ms. Murray's unavailability, for requesting a continuance. (N.T. 3/28/14 p. 15). Thus, this decision was within the Court's proper discretion and should stand.

Third, the Defendant argues that this Court abused its discretion by denying his request for a jury instruction on the law of inconsistent statements. The Defendant claims that this refusal constituted reversible error because the inconsistent statement at issue was an essential element of the Defendant's justification defense. This Court disagrees.

In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of the appellate court to determine whether the record supports the trial court's decision. *Commonwealth v. Thomas*, 2006 PA Super 192, 904 A.2d 964 (Pa. Super. 2006) *quoting Lockhart v. List*, 542 Pa. 141, 147, 665 A.2d 1176, 1179 (1995). Appellate review of a trial court's jury instructions is one of deference. *Commonwealth v. Demarco*, 570 Pa. 263, 271, 809 A.2d 256, 260-61(2002). An appellate court will only reverse a decision to refuse a proposed jury instruction when that decision constituted an abuse of discretion or an error of law. *Commonwealth v. Galvin*, 603 Pa. 625, 651, 985 A.2d 783, 798-799 (2009) (*citing Commonwealth v. DeMarco*, 570 Pa. 263, 271, 809 A.2d 256, 260–61 (2002).

13

Consequently, the trial court has wide discretion in fashioning jury instructions. *Atwell v. Beckwith Machinery Co.*, 2005 PA Super 132, 872 A.2d 1216, 1222 (Pa. Super. 2005); *Angelo v. Diamontoni*, 2005 PA Super 120, 871 A.2d 1276, 1279 (Pa. Super. 2005). Moreover, the trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal. *Commonwealth v. Newman*, 382 Pa. Super. 220, 555 A.2d 151, 158-159 (Pa. Super. 1989). Furthermore, for a claim to have validity on appeal, an objection must be raised at the time the instruction is given. *See Commonwealth v. Pressley*, 887 A.2d 220, 224-25 (Pa. 2005). If no objection is raised at the time of instruction, the right to appeal the court's instruction is waived. *Commonwealth v. Russel*, 838 A.2d 1082, 1093 (Pa. Super. 2007).

The Court did in fact address inconsistent statements in its jury instructions. (N.T. 3/28/14 pp. 79-81). The Defendant's request for a specific instruction on prior inconsistent statements and their use as substantive evidence is a matter of judicial discretion according to relevant authority. *See Demarco*, 570 Pa. 263 at 271. Furthermore, whether a prior inconsistent statement constitutes truth is a matter of credibility. *Commonwealth v. Adams*, 882 A.2d at 498. This Court addressed this issue thoroughly throughout its jury instructions. (N.T. 3/28/14 pp. 79-81). Thus, because the Court informed the jury of its role in deciding credibility issues, additional instructions specifically addressing when an inconsistent statement should be considered true would have been redundant and inconsequential.

The Defendant also never raised a direct objection to the Court's jury instructions at the time they were given. (N.T. 3/28/14 pp. 70, 99). Thus, the claim is waived as a matter of law. *Commonwealth v. Russel*, 838 A.2d 1082, 109 3 (Pa. Super. 2007). The Defendant may not, under these circumstances, request appellate review. *Id.*

14

Fourth, the Defendant argues that the verdict was against the weight of the testimony. Specifically, the Defendant contends that there was uncontradicted testimony that the Complainant pulled the Defendant from her bike and attacked her. The Defendant also notes that the jury foreman stated the jury did not believe that the Defendant meant to harm the Complainant. This Court disagrees.

To be guilty of Aggravated Assault, a person must attempt to cause serious bodily injury to another or cause such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life. 18 Pa. C.S.A. § 2702. To be guilty of Possessing an Instrument of Crime, one must possess an instrument of crime with intent to employ it criminally. 18 Pa. C.S.A. § 907. The statute defines an instrument of crime as anything specially made or specially adapted for criminal use or anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for the lawful uses it may have. *Id.*

Here, the evidence supports the verdict as the jury heard testimony from the Complainant, Mr. Jackson, and the Defendant herself that the Defendant stabbed the Complainant and punctured her lungs. (N.T. 3/27/14 pp. 31, 36-70). Additionally, Defense Counsel stipulated that these actions resulted in Ms. Wilson being hospitalized for nineteen (19) days. (N.T. 3/28/14 p. 96). Hence, there was sufficient evidence for the jury to conclude that the Defendant caused the victim serious bodily injury.

Furthermore, there was evidence that the Defendant's actions were committed either intentionally, knowingly, or recklessly. On direct examination, the victim testified that the fight began when the two confronted each other. The victim also stated that she was unarmed. The Defendant, by contrast, had a knife. Thus, it was logical for the jury to conclude that the

15

Defendant, who not only had a knife but struck the victim twice, was aware that serious bodily harm could result. Because a defendant's awareness is essential to a fact finder's analysis of the mental states "knowingly" and "recklessly" it cannot be said that the evidence was insufficient.

In this respect, the Defendant's assertion that the jury did not believe that the Defendant meant to harm the Complainant is of little consequence. The jury's verdict was based on the evidence of record. Intent is only one mental state required to prove aggravated assault. 18 Pa. C.S.A. § 2702. The jury was instructed on all three mental states and permitted to consider each state when deciding the Defendant's guilt. For this reason, the Defendant's argument must fail.

There was also sufficient evidence to convict the Defendant for Possession of an Instrument of Crime. Here, the Defendant had a knife on her that was designed to fix bikes yet she used it to strike the victim. Striking a person was not the knife's intended purpose. Thus, it was logical for the fact finder to conclude that the Defendant possessed an instrument of crime and used it for criminal purposes as defined by the statute.

The Defendant argues in the fifth issue on appeal, that the evidence was insufficient to disprove self-defense beyond a reasonable doubt. This Court disagrees.

To claim justifiable use of force (self-defense), an actor must believe that force is immediately necessary to protect himself against the use of unlawful force by another. 18 Pa. C.S.A. § 505. The defendant has no "burden to prove" self-defense. *Commonwealth v. Torres*, 564 Pa. 219, 224, 766 A.2d 342, 345 (2001). However, there must be some evidence, from whatever source to justify a finding of self-defense. *Id.* If there is any evidence that will support the claim, then the issue is properly before the fact finder. *Id.*

A proper self-defense claim places the burden on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense. *Commonwealth v.*

16

*McClendon*, 874 A.2d 1223, 1229-30 (Pa. Super. 2005). The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety. *Commonwealth v. Hammond*, 953 A.2d 544, 559 (Pa. Super. 2008), appeal denied, 600 Pa. 743, 964 A.2d 894 (2009) (*quoting McClendon*, 874 A.2d at 1230).

In this case, it is incorrect to say there was uncontradicted testimony that the Complainant pulled the Defendant from her bike and began attacking her. This version of events, according to the trial transcript, is only recounted by the Defendant herself. (N.T. 3/27/14 p. 26). The other witnesses' testimony was contrary to the Defendant's account. (N.T. 3/27/14 pp. 45-75). Ms. Wilson, the Complainant, testified that she never confronted the Defendant. *Id.* Mr. Jackson, the only other witness near the crime scene corroborated this testimony, testifying that although he saw the Defendant and the Complainant in a mutual face-to-face confrontation, he did not see the fight's beginning. (N.T. 3/27/14 pp. 49-75).

The Defendant also admitted that she stabbed the Complainant, who by all accounts was unarmed. (N.T. 3/28/14 pp. 30-35). The Defendant also fled the scene and later disposed of the knife on her way to the park that same day. *Id.* The Defendant claimed that she received a busted lip, swollen head, and bruises on her lips as a result of the fight. (N.T. 3/28/14 pp. 47-48). However, there was no physical or documented evidence that she received any injuries. *Id.* Whereas the parties stipulated that the Complainant was hospitalized for nineteen (19) days to treat her injuries. (N.T. 3/27/14 p. 96). Thus, the jury had evidence to reasonably conclude that the Defendant's actions did not amount to justifiable self-defense. For this reason, it cannot be said that there was insufficient evidence to disprove self-defense beyond a reasonable doubt.

## VI.    CONCLUSION

For all of these reasons, this Court's decision should be affirmed.

BY THE COURT:

SIERRA THOMAS STREET, J.

Dated: March 12ᵗʰ, 2015

18